**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gloria ZAFIRO, José Martinez, Salvador Garcia, and Alfonso Soto, Defendants– Appellants.**

Nos. 89–3520, 89–3639, 89– 3660 and 89–3729.

United States Court of Appeals, Seventh Circuit.

Argued June 14, 1991.
Decided Sept. 26, 1991.

Mark A. Flessner (argued), Ava M. Gould, Patricia B. Holmes, Barry R. Elden, Asst. U.S. Attys., Office of the U.S. Atty., Crim., Receiving, Appellate Div., Chicago, Ill., for U.S.

Thomas J. Royce, Chicago, Ill., for Zafiro.

Steven R. Decker (argued), Chicago, Ill., for Martinez.

Joseph Abraham, Jr., Charles L. Roberts, El Paso, Tex., Kent R. Carlson (argued), Pomper & Associates, Chicago, Ill., for Garcia.

Kenneth L. Cunniff (argued), John F. Murphy, Office of the Federal Public Defender, Chicago, Ill., for Soto.

Before POSNER, MANION and KANNE, Circuit Judges.

POSNER, Circuit Judge.

The four defendants were tried together by a jury for offenses involving cocaine and other illegal drugs, and all were convicted. José Martinez was sentenced to 262 months in prison and the

three other defendants—Alphonso Soto, Salvador Garcia, and Gloria Zafiro—to 151 months each even though the jury had acquitted Zafiro of possession with intent to distribute and convicted her only of participating in, or aiding and abetting, conspiracy. The verdict does not distinguish between actual participation on the one hand and aiding and abetting on the other. At first glance it might seem odd that there could be (as the cases hold there can be, *United States v. Galiffa*, 734 F.2d 306 (7th Cir.1984)) separate crimes of conspiracy and of aiding and abetting a conspiracy—for would not the act of aiding and abetting make the aider and abettor a member of the conspiracy? Not necessarily. Suppose someone who admired criminals and hated the police learned that the police were planning a raid on a drug ring, and, hoping to foil the raid and assure the success of the ring, warned its members—with whom he had had no previous, or for that matter subsequent, dealings—of the impending raid. He would be an aider and abettor of the drug conspiracy, but not a member of it. *United States v. Lane*, 514 F.2d 22 (9th Cir.1975). For the essence of conspiracy is agreement, and there is none in our hypothetical case.

Of the issues raised by the defendants on appeal only two have sufficient merit to warrant discussion. The first is whether the judge should have granted the motions of Martinez, Soto, or Garcia for severance of their trials; the second is whether a reasonable jury could have found Zafiro guilty beyond a reasonable doubt. The government's case was simple. The three male defendants were acquaintances and Zafiro was Martinez's girl friend. The defendants operated a business of distributing illegal drugs at two locations—Zafiro's apartment in Cicero, Illinois, and Soto's bungalow-with-detached-garage in Chicago. One day, government agents followed Soto and Garcia as they transported a large box in Soto's car from Soto's garage to Zafiro's apartment. The agents identified themselves as they followed the two up the stairs to the apartment. Soto and Garcia dropped the box and ran into the apartment, closely followed by the agents, who found all four defendants in the living room. The box contained 55 pounds of cocaine. Another 20 pounds were found in a suitcase in a closet in Zafiro's apartment and in a car in Soto's garage. The car was registered to another girl friend of Martinez's; he had given the car to her as a present but she had never used it.

The basis of the motions for severance by Soto and Garcia was that their defenses were mutually antagonistic. Soto testified that he didn't know anything about any drug conspiracy: Garcia had asked him for a box and he had given it to him; he didn't discover what was in it until it was opened when they were arrested. Garcia did not testify but his lawyer argued in closing argument that it was Soto's box and Garcia had known nothing about it. The basis of Martinez's motion for severance was that Zafiro's defense was antagonistic to his own. Zafiro testified that she was just a girl friend. Martinez stayed in her apartment from time to time, kept some clothes there, and gave her small amounts of money. But when he asked her whether he could store a suitcase in her closet he did not tell her that it contained narcotics and she had no idea it did. Martinez did not testify but his lawyer argued that Martinez had not known that cocaine was going to be delivered to Zafiro's apartment or that the suitcase in the closet contained cocaine; after all, it wasn't his apartment.

The government denies that the defenses of these various defendants were mutually antagonistic but concedes that if they were the defendants would be entitled to separate trials. The government describes this as a case merely of "finger-pointing," which it considers critically different from presenting mutually antagonistic defenses although as an original matter we might have thought that for codefendants to point the finger of guilt at each other was about as forthright a gesture of mutual antagonism as could be imagined. Rule 14 of the federal criminal rules allows severance if a defendant (or for that matter the government) would be "prejudiced" by a joint trial. There is nothing about mutual antagonism. There is nothing, either, to

suggest that two defendants cannot be tried together if it is certain that one but not both committed the crime and the only uncertainty is which one—the government's idea of when mutually antagonistic defenses bar a joint trial.

■ True, a vast number of cases say that a defendant is entitled to a severance when the "defendants present mutually antagonistic defenses" in the sense that "the acceptance of one party's defense precludes the acquittal of the other defendant," *United States v. Keck*, 773 F.2d 759, 765 (7th Cir.1985) (though *United States v. McPartlin*, 595 F.2d 1321, 1334 (7th Cir. 1979), denies this proposition), but not when the defendants are engaged merely in "finger-pointing." *United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987); *United States v. Emond*, 935 F.2d 1511, 1514 (7th Cir.1991). This formulation has become canonical. But we recall Justice Holmes's warning that to rest upon a formula is a slumber that prolonged means death. The fact that it is certain that a crime was committed by one of two defendants is a reason for trying them together, rather than a reason against, to avoid "the scandal and inequity of inconsistent verdicts." *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987). Cf. *United States v. Buljubasic, supra*, 808 F.2d at 1263. The analogy of interpleader comes to mind, Fed.R.Civ.P. 22; also such joint-tort cases as *Summers v. Tice*, 33 Cal.2d 80, 199 P.2d 1 (1948), and *Sindell v. Abbott Laboratories*, 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (1980). And as we said earlier we are not clear why the case in which the acceptance of one party's defense precludes the acquittal of the other defendant could not be regarded as a paradigmatic case of finger-pointing. We must dig beneath formulas.

■ As an original matter, persons charged in connection with the same crime should be tried separately only if there is a serious risk that a joint trial would prevent the jury from making a reliable judgment about the guilt or innocence of one or more of the defendants. Two situations might fit this bill. The first is that of a *complex* case with *many* defendants some of whom might be only *peripherally* involved in the alleged wrongdoing. The danger is that the bit players may not be able to differentiate themselves in the jurors' minds from the stars. Against that danger must be weighed the interest in trying all members of a conspiracy together so that the jury can get a complete picture and the government can save the expense of conducting multiple trials to break a single ring. This counterweight has invariably prevailed in the appellate cases, e.g., *United States v. Diaz*, 876 F.2d 1344, 1357–59 (7th Cir.1989); *United States v. Moya–Gomez*, 860 F.2d 706, 754 (7th Cir.1988); *United States v. L'Allier*, 838 F.2d 234, 241–42 (7th Cir. 1988); *United States v. Percival*, 756 F.2d 600, 610 (7th Cir.1985)—we can find no recent reversals on this ground in this circuit, and only a couple in others. *United States v. Engleman*, 648 F.2d 473, 480–81 (8th Cir.1981); *United States v. Salomon*, 609 F.2d 1172, 1175–77 (5th Cir.1980). Either appellate courts have faith that the jury will obey instructions to consider the evidence regarding each defendant separately, or they defer to the district judge's judgment that a severance is not required. They might defer as much to the opposite judgment, but such cases are underrepresented in an appellate sample. When the district judge grants a severance and the defendants go on to trial and are either acquitted or convicted, there is no possibility of appeal—well, almost none. If the government appeals the dismissal of an indictment or some other order made appealable by 18 U.S.C. § 3731, it may be permitted to challenge a severance under the doctrine of pendent appellate jurisdiction. *United States v. Maker*, 751 F.2d 614, 626 (3d Cir.1984), allowed the government to challenge several severances in such a case, though without mentioning the doctrine or insisting on that close relatedness between the pendent and the independently appealable order that is a central element of the doctrine. *Patterson v. Portch*, 853 F.2d 1399, 1403 (7th Cir.1988).

■ A severance is more likely to be granted, and rightly so, when the defen-

dants are not alleged to be members of a single conspiracy but instead are more loosely related to one another, for then the economies of a joint trial are fewer. *United States v. Velasquez,* 772 F.2d 1348, 1353 (7th Cir.1985); *United States v. Castro,* 829 F.2d 1038, 1045–46 (11th Cir.1987). Such cases are rare, however, because different offenders can be joined in a single indictment only "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R.Crim.P. 8(b). That will ordinarily require that they be charged, or chargeable, either as coconspirators or as aiders and abettors of a conspiracy. *United States v. Velasquez, supra,* 772 F.2d at 1353.

The second type of case in which a joint trial is likely to throw the jury off the scent is where exculpatory evidence essential to a defendant's case will be unavailable—or highly prejudicial evidence unavoidable—if he is tried with another defendant. For example, *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), holds that a limiting instruction is insufficient to dispel the prejudice to a codefendant of being inculpated in a defendant's confession, and in such a case either redaction (*Richardson v. Marsh, supra*) or severance may be necessary. And there are cases in which a person would refuse to testify for a codefendant in a joint trial for fear of incriminating himself, yet if tried separately and convicted might thereafter be willing to testify and might give testimony exculpating the other defendant. *Tifford v. Wainwright,* 588 F.2d 954 (5th Cir.1979) (per curiam). The danger of course is that all the codefendants will want to be tried last, producing impasse.

■ However that issue be resolved, mutual antagonism, finger-pointing, and other manifestations or characterizations of the effort of one defendant to shift the blame from himself to a codefendant neither control nor illuminate the question of severance. If it is indeed certain that one and only one of a group of defendants is guilty, the entire group should be tried together, since in separate trials all might be acquitted or all convicted—and in either case there would be a miscarriage of justice. We can imagine, if barely, a situation in which all but one of the defendants try to place the blame on that one, so that he finds himself facing in effect a barrage of prosecutors—the official prosecutor and the other defendants' lawyers. Maybe a jury would be misled in such a case, and if the danger was substantial the district judge would be obliged to grant a severance. That is not this case. Each member of each pair of defendants (Soto–Garcia and Martinez–Zafiro) was accusing the other of being the drug dealer. In this symmetrical situation, each defendant had to defend himself against the prosecutor and one other defendant but at the same time had a live body to offer the jury in lieu of himself (or herself). Soto could say, "Don't convict me, convict Garcia," and Garcia's lawyer could say, "Don't convict my client, convict Soto." This was apt to be a more persuasive line than telling the jury to let everyone go, when the one thing no one could question is that the government had found 75 pounds of cocaine on premises connected with these defendants. No defendant was placed at a *net* disadvantage by being paired with another defendant whom he could accuse and who could accuse him in turn, let alone so disadvantaged as to be unable to obtain a fair trial. Cf. *United States v. Madison,* 689 F.2d 1300, 1306 (7th Cir.1982). And the benefit of the joint trial went beyond the avoidance of duplication. The jury was given the full picture, which it would not have had if the trial had been limited to two of the four alleged conspirators (one from each pair, since neither Soto nor Garcia complain of being tried with Martinez and Zafiro, and Martinez does not complain of being tried with Soto and Garcia). Joint trials, in this as in many other cases, reduce not only the direct costs of litigation, but also error costs.

■ We remind the defense bar that they are not obliged to make futile arguments on behalf of their clients. The argument that a conviction should be reversed because the district judge failed to sever properly joined defendants for trial is near-

ly always futile even when the defendants can be said to be presenting mutually antagonistic defenses.

 We come to the second question, that of Zafiro's guilt. There was no direct evidence against her. The drugs were found in her apartment—as was she. If that were all the evidence, we would reverse her conviction with directions to acquit. Our system of criminal justice does not permit the conviction of a person for the crime of aiding and abetting, or for the crime of conspiracy, merely because he is found on premises where illegal drugs are delivered or kept. *United States v. Atterson*, 926 F.2d 649, 656 (7th Cir.1991). Suppose Martinez and Zafiro had been married, and, unbeknownst to his wife, Martinez stored narcotics in the house or received deliveries there, or both. Obviously with no knowledge of what was going on she could not be convicted of participating in a drug-dealing conspiracy with him. Nor could she be convicted of aiding and abetting her husband's drug dealing. The crime of aiding and abetting requires *knowledge* of the illegal activity that is being aided and abetted, a *desire* to help the activity succeed, and some *act* of helping. *United States v. Pino–Perez*, 870 F.2d 1230, 1235 (7th Cir.1989) (en banc); *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938) (L. Hand, J.). In our hypothetical case not one of the three elements would be present. If the wife did know what was going on but did nothing to help her husband, the second and third elements would be missing and again she would have to be acquitted. Whether she could be convicted of conspiracy would depend on whether she could be found to have agreed to participate in her husband's illegal activity; again, mere knowledge of that activity would not be enough. *United States v. Williams*, 798 F.2d 1024, 1028–30 (7th Cir. 1986).

 Does it make a difference if, as here, the wife is not a wife but a girl friend and she lives in her own apartment, not her boyfriend's apartment or an apartment owned or leased jointly by them? It does. If the boyfriend is using her apartment in his drug dealings, then by providing the apartment for his use (whether or not she understands the nature of the use) she is helping his illegal activity, and the third element is satisfied; whereas a wife who merely does not prevent her husband from using their home for illegal purposes does not help his illegal activity in the relevant sense. But the girl friend's knowledge or lack thereof—the first element required for aiding and abetting—remains crucial. If she does not know what use her boyfriend is making of her apartment—if Zafiro did not know what was in the suitcase and did not know that Soto and Garcia were bringing a load of drugs to the apartment when the arrests took place—she is guilty neither of aiding and abetting nor of conspiracy.

 To be proved guilty of aiding and abetting, still another element must be established: that the defendant desired the illegal activity to succeed. The purpose of this requirement is a little mysterious but we think it is to identify, and confine punishment to, those forms of assistance the prevention of which makes it more difficult to carry on the illegal activity assisted. A clerk in a clothing store who sells a dress to a prostitute knowing that she will be using it in plying her trade is not guilty of aiding and abetting. *United States v. Giovannetti*, 919 F.2d 1223, 1227 (7th Cir. 1990); Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 747 (3d ed. 1982). The sale makes no difference to her illegal activity. If the clerk didn't make the sale, she would buy, at some trivial added expense in time or money, an equivalent outfit from someone ignorant of her trade. That is where the requirement of proving the defendant's desire to make the illegal activity succeed cuts off liability. The boost to prostitution brought about by selling a prostitute a dress is too trivial to support an inference that the clerk actually *wants* to help the prostitute succeed in her illegal activity. If on the other hand he knowingly provides essential assistance, we can infer that he does want her to succeed, for that is the natural consequence of his deliberate act. It might be better in evalu-

ating charges of aiding and abetting to jettison talk of desire and focus on the real concern, which is the relative dangerousness of different types of assistance, but that is an issue for another day.

■ In the case of conspiracy the additional element required for guilt is not desire for success, which can be assumed from proof that the defendant joined the conspiracy, but, precisely, the agreement. That element is not supplied by mere knowledge of an illegal activity either, let alone by mere association with other conspirators or mere presence at the scene of the conspiratorial deeds. *United States v. Williams, supra; United States v. Atterson, supra.*

So if all the government had in the way of evidence against Zafiro were that she and the drugs were both found in the apartment at the time of the arrest of her boyfriend and his two associates, a reasonable jury could not convict her of either conspiracy or aiding and abetting any more than it could have convicted the girl friend whose car was found to contain illegal drugs and who was not even charged (granted, she apparently had never used the car). Guilt by association is not a permissible theory of criminal liability even in the war against drugs. But there is more in this case. A qualified expert witness— an experienced drug enforcement officer— testified that drug dealers do not discuss or deliver large quantities of illegal drugs in the presence of innocent bystanders. When arrested, Zafiro was in the living room of her apartment with Martinez awaiting the delivery by Soto and Garcia of 55 pounds of cocaine, no doubt to be stashed in the apartment until sold. And in Zafiro's closet was a suitcase full of cocaine. It is unlikely that a girl friend would be allowed to think that a suitcase with many thousands of dollars worth of cocaine actually contained a load of flea powder or that a heavy box of cocaine really was full of kitty litter. The witness's testimony about the methods of drug dealers may have been untrue, but Zafiro's counsel presented no testimony to the contrary. And if Zafiro knew that her apartment was being used as a stash house, she was knowingly rendering material assistance to her codefendants and desired that their malefaction succeed.

■ Zafiro took the stand to defend herself. She denied knowing anything about Martinez's drug dealings. Obviously the jury disbelieved her denials. The government cannot force a defendant to take the stand, of course, but if he does and denies the charges and the jury thinks he's a liar, this becomes evidence of guilt to add to the other evidence. *Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir.1952) (L. Hand, J.). Concern has been expressed recently that "if negative inferences, based on demeanor evidence, were adequate in themselves to satisfy a rational juror of guilt beyond a reasonable doubt, appellate courts might not be able to provide meaningful review of the sufficiency of evidence." *United States v. Jenkins*, 928 F.2d 1175, 1179 (D.C.Cir.1991). Judge Hand had expressed the same concern in *Dyer v. MacDougall, supra*, 201 F.2d at 169. Such cases are unlikely to occur, however, for if there is no evidence of guilt other than what the defendant might supply by offering protestations of innocence that the jury disbelieved, he would have no reason to take the stand; he would be entitled to a directed acquittal at the close of the government's case. Zafiro's lawyer did move for directed acquittal then, but he does not cite the denial of that motion as error. We therefore need not decide whether, if Zafiro had not taken the stand, the testimony of the expert witness would have been enough to tip the scales of justice to guilt, given the heavy burden of proof that the government bears in criminal cases. That issue is moot. She testified; and on the basis of her demeanor and the expert testimony the jury was entitled to conclude that she knew what was in the suitcase and what was coming in the box. If she knew those things she knew that by providing her apartment for the storage of these containers she was aiding a drug conspiracy involving Martinez. No more was necessary to make her an aider and abettor of that conspiracy. Cf. *United*

*States v. Percival,* 756 F.2d 600, 610–11 (7th Cir.1985).

AFFIRMED.