UNITED STATES of America, Plaintiff,

v.

Rufus SIMS, et al., Defendants.

No. 92 CR 166.

United States District Court,
N.D. Illinois, E.D.

Nov. 2, 1992.

Scott T. Mendeloff and Sean B. Martin, U.S. Attorney's Office, Chicago, IL, for plaintiff.

Michael Gregory Logan, Chicago, IL, for defendant Rufus Sims.

Daniel S. Alexander, Durkin, Foster, Roberts & Barrett, Chicago, IL, for defendant Donald Moore.

Robert G. Clarke, Chicago, IL, for defendant Michael Stevens.

Standish E. Willis, Chicago, IL, for defendant Delwin Langston.

Richard S. Jalovec, Richard S. Jalovec & Associates, and Linda Amdur, Chicago, IL, for defendant Dennis Gilliam.

Paul Augustus Wagner, Chicago, IL, for defendant William Burch.

Michael Gregory Logan, Chicago, IL, for defendant Timothy Henderson.

William J. Stevens, Chicago, IL, for defendant Darryl Young.

Paul Edward Paprocki, Chicago, IL, for defendant Joe Boyles.

Carl Peter Clavelli, Chicago, IL, for defendant Maurice Harmon.

Robert S. Bailey, Chicago, IL, for defendant Shawn Baker.

Keith Allan Spielfogel, Chicago, IL, for defendant Estella Sims.

Terence Patrick Gillespie and Marc William Martin, Genson, Steinback & Gillespie, Chicago, IL, for defendant Andrea Thomas.

Herbert Louis Goldberg, Giovannini & Goldberg, and Sheldon Bart Nagelberg, Chicago, IL, for defendant Ruby Chambers.

Richard A. Halprin, Chicago, IL, for defendant Eric Smith.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant Richard Goldstein's Motion for Severance pursuant to Rule 14 of the Federal Rules of Criminal Procedure. Rule 14 authorizes a trial court to sever defendants for separate trials "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together...." FED.R.CRIM.P. 14. Goldstein argues that he will not receive a fair trial unless severance is granted since defendant Estella Sims may present a defense that is mutually exclusive and antagonistic to Goldstein's defense.

Goldstein asserts that Sims will present the following two "antagonistic" theories of defense. First, Goldstein states that Sims "may testify that Defendant Goldstein directed and instructed her to obtain cashier's checks in the amounts less than $10,000.00 so as to avoid the detection of the existence of substantial amounts of currency in her possession for the purchase of real estate...." Memorandum in Support of Defendant Goldstein's Motion for Severance [hereinafter "Goldstein's Memorandum"], at 2–3. Second, Goldstein states that "[o]pening statements and all witnesses for the government or Sims defense will be prodded on direct or cross-examination that Ms. Sims admitted that her lawyer told her to get certified checks in the amounts less than $10,000.00 for real estate purchases in order to 'launder' large sums of cash." Id. at 3. Goldstein contends that he "denies these allegations and anticipates presenting evidence in direct contradiction to Sims [sic] theory of defense." Id.

Goldstein's motion must be denied for several reasons. First, the purported "defenses" proffered in Goldstein's motion are not legal defenses at all. A claim by Estella Sims that Goldstein instructed or directed her as to how she could obtain cashier's checks in order to avoid detection of large amounts of cash does not amount to a legal defense. As the government argues, the claim of "instruction or direction" by Goldstein does not give rise to a defense of duress or involuntariness. Government's Response to Defendant Goldstein's Motion to Sever Trial [hereinafter "Government's Response"], at 5. Therefore, the jury's acceptance of Estella Sims' anticipated defense would not lead to acquittal of Estella Sims and conviction of Goldstein. Rather, the "defense" that Goldstein identifies would show that both Sims and Goldstein are guilty of money laundering and aiding and abetting the narcotics conspiracy.

Second, even if Sims' anticipated testimony could be characterized as a "defense," Goldstein does not sufficiently state his legal defense in order to show mutual antagonism. Goldstein merely states that he "denies these allegations and anticipates presenting evidence in direct contradiction to Sims [sic] theory of defense." Goldstein's Memorandum, at 3. Goldstein does not cite specific evidence he will present in direct contradiction with the evidence Estella Sims may present. It is not clear that Estella Sims will actually testify, and Goldstein does not specify any single piece of evidence that Sims' counsel will elicit on

examination of any witnesses. Therefore, the motion is too vague, speculative and premature to warrant severance.

Finally, even if the court ignored the aforementioned defects in Goldstein's arguments, severance is not warranted in this case. There exists a strong presumption in the Seventh Circuit in favor of joint conspiracy trials. *See, e.g., United States v. Velasquez*, 772 F.2d 1348, 1352 (7th Cir. 1985), *cert. denied*, 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986). As a general rule:

> [w]hen a group of people are charged with participating in the same crime, they ordinarily are tried together even if the evidence is stronger against one or some than against others. The danger of prejudice to the least guilty, or perhaps prejudice to all from the sheer confusion of a multidefendant trial, is in all but the most unusual circumstances considered outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all.

*Id.* (citations omitted). *See also United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir.) ("There is a strong interest in joint trials of those who engaged in a common enterprise."), *cert. denied*, 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987). Inconsistent defenses may create prejudice, but they do not require severance *per se. Id.* "Unless the defenses are so inconsistent that the *making* of a defense by one party will lead to an unjustifiable inference of another's guilt, or unless acceptance of a defense *precludes* acquittal of other defendants, it is not necessary to hold separate trials." *Id.* (citations omitted).

Goldstein predicts that Estella Sims will attempt to inculpate Goldstein as the person who instructed and directed her about how to launder funds and structure illegal financial transactions. This allegation does not constitute a defense for Sims but amounts to mere fingerpointing at a co-defendant. "Fingerpointing is an accept-

able cost of the joint trial and at times is even beneficial because it helps complete the picture before the trier of fact." *Id.* Furthermore, "[a]ntagonistic defenses do not require the granting of severance, even when one defendant takes the stand and blames his co-defendant for the crime." *United States v. McPartlin*, 595 F.2d 1321, 1334 (7th Cir.) (citations omitted), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). In the instant case, the anticipated testimony of Estella Sims only partially blames Goldstein since it would place responsibility on him only for "instruction and direction" and would not exculpate Sims.

Goldstein cites *De Luna v. United States*, 308 F.2d 140 (5th Cir.1962) as warranting severance by analogy to the instant case.[1] In *De Luna*, cited in *United States v. Ziperstein*, 601 F.2d 281, 285 (7th Cir. 1979), *cert. denied*, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980), one defendant claimed that he came into possession of narcotics only when the other defendant saw the police approach and shoved the drugs into his hands. The other defendant denied ever having possession of the drugs and claimed they had always been in the possession of the first defendant. Therefore, the court granted severance in *De Luna* since there existed no doubt that one of the two defendants committed a crime, the only question being which one of the two committed it. *Ziperstein*, 601 F.2d at 285.

In the instant case, however, it remains plausible for both defendants to deny committing any crime. As the government asserts, Sims could claim that she did not intend to aid and abet any narcotics conspiracy and obtained the checks in the manner advised by her attorney without knowledge that it was illegal. Concurrently, Goldstein could claim that he had no knowledge of the narcotics transactions and no reason to know that Sims' money constitut-

---

**1.** The Government questions whether, in light of *United States v. Zafiro*, 945 F.2d 881 (7th Cir. 1991), *cert. granted*, —— U.S. ——, 112 S.Ct. 1472, 117 L.Ed.2d 617 (1992), the Fifth Circuit's 1962 decision in *De Luna* would be good law in this circuit. Government's Response, at 8 n. 2. *See Zafiro*, 945 F.2d at 886 (blame shifting among co-defendants may be a reason to deny severance in order to prevent inconsistent verdicts and a miscarriage of justice).

**630**

ed illegal proceeds, regardless of what he told Sims to do with the checks. Government's Response, at 8. Thus, both defendants could claim lack of the requisite intent for the offenses charged, and their defenses would not be mutually exclusive. *Id. See, e.g., Buljubasic*, 808 F.2d at 1263 (severance not necessary "unless the acceptance of a defense *precludes* acquittal of other defendants").

In conclusion, "severe prejudice is required for an order of severance...." *United States v. Velasquez*, 772 F.2d at 1352. The court believes defendant Goldstein would not be severely prejudiced by a joint trial with Estella Sims. Accordingly, for the above stated reasons, Goldstein's Motion for Severance is denied.