**Selig S. ALPERN, Plaintiff,**

v.

**REMY MARTIN AMERIQUE, INC., Defendant.**

**No. 91 Civ 1180 (VLB).**

United States District Court, S.D. New York.

Jan. 27, 1995.

George A. Weissblum, Bronxville, NY, for plaintiff.

Jamie B.W. Stecher, New York City, for defendant.

### MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

I

In this age discrimination case brought under 29 USC 626, plaintiff, born on May 2, 1923, claims that his discharge along with a large number of other employees upon the acquisition of 21 Brands, Inc. (an importer of wines and spirits) by defendant Remy Martin Amerique, Inc., (the "employer") was discriminatory. The employer has moved for summary judgment dismissing the complaint under Fed.R.Civ.P. 56. The motion is denied.

II

On March 10, 1989, the employer (utilizing subordinate entities which need not be described here) purchased 21 Brands and proceeded to dismiss a large number of its employees, including six (6) of the ten (10) em-

ployees of 21 Brands' eastern region. Plaintiff was among those terminated.

Plaintiff's duties while working for 21 Brands had been to sell its beverages to downstream distributors. He appears to have done so successfully; the employer makes no effort to establish that plaintiff's work performance had been deficient while at 21 Brands or that he was unable to function effectively for the employer.

According to the employer, the sole reason for plaintiff's being dismissed upon acquisition of 21 Brands was that during a single interview with the manager charged with selecting those who could stay and who must leave, plaintiff expressed an opinion different from that manager with respect to whether sales to a single exclusive subdistributor or to multiple outlets would be the best business strategy.[1] There is no suggestion that plaintiff indicated in any way that he would be either unable or unwilling to implement whatever sales strategy was chosen by the employer.

According to a witness present at a high-level executive meeting of managers of the employer, plaintiff's role in the sales of the brands of products involved was such that a question was raised as to what to tell customers concerning the reasons for terminating the plaintiff. In response to that question, according to the witness, a statement was made by the manager scheduled to supervise the entire former 21 Brands operation that customers should be told that "we had to let [plaintiff] go because he is an old man."

## III

While the age level of former employees of 21 Brands in the Eastern Region increased from 46.74 to 48.07 as a result of the reduction in force implemented by the employer, nationwide statistics show a different picture: of 48 employees aged 40 or over, 35 or 73% were terminated, whereas of the 28 employ-

ees aged under 40, only 14 (50%) lost their positions.

## IV

■ The employer points out that the manager who, pursuant to authority delegated to him, decided to drop plaintiff from the workforce was over 40 and did not make the statement quoted above, and that the witness may have harbored a personal grudge against the employer. These facts suggest weaknesses in plaintiff's case, but do not support granting of summary judgment.

There is no suggestion that age was the only criterion for retention of 21 Brands' employees. Given the nationwide pattern set forth above, however, a factfinder could infer that the manager who terminated plaintiff was implementing generalized instructions from above, especially since plaintiff—with a concededly adequate record and performance capabilities—was purportedly dismissed because of a mere expression of opinion concerning strategy.[2]

■ Given evidence of a discussion concerning plaintiff involving high-level personnel of the employer, a factfinder could also infer that the manager who fired plaintiff acted upon instructions of top management, including the executive who, according to the witness, made the statement quoted above concerning the reason for plaintiff's termination. While not conclusive, evidence of a comment such as that quoted above may be given weight in evaluating other facts. See *Ostrowski v. Atlantic Mutual Insurance Companies*, 968 F.2d 171, 182 (2d Cir.1992); *Kirschner v. Office of Comptroller*, 973 F.2d 88 (2d Cir.1992); see also *Monsanto v. Spray–Rite Service*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1987).

The implausibility[3] of the employer's explanation for plaintiff's termination, while not conclusive, suggests that the credibility of

---

1. The names of natural persons not parties to the litigation need not be mentioned in this memorandum order. See *Christiana v. Metropolitan Life*, 839 F.Supp. 248 (S.D.N.Y.1993).

2. Compare *Stewart v. IBM*, 867 F.Supp. 238 (S.D.N.Y.1994); *Chorbajian v. Goldhirsch Group*, 814 F.Supp. 333 (S.D.N.Y.1992).

3. See *Matsushita Electric Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Ordered

the witnesses presented by each side, including demeanor evidence[4] is necessary to determine whether or not the Age Discrimination Act was violated.

## V

Denial of summary judgment does not mean that plaintiff's case is likely to prevail at trial. No direct evidence of actual consideration of plaintiff's age in the decision of the decision maker directly involved in the decision to terminate him has been provided. Statistical evidence concerning the eastern region tends to contradict plaintiff's contention that age was a negative factor in the area in which plaintiff worked.

Under these circumstances, given the weaknesses in the arguments of both parties, mediation, arbitration or other informal dispute resolution methods are particularly appropriate. The parties are directed to consider such options as well as the possibility of direct settlement, and report the results to the court by conference telephone call within 30 days of the date of this memorandum order.

SO ORDERED.

---

4. See *United States v. Zafiro*, 945 F.2d 881 (7th Cir.1991), *aff'd* —— U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).