*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellee

**v.**

**Hector NICOLA, Staff Sergeant**
United States Army, Appellant

**No. 18-0247**

Crim. App. No. 20150781

Argued November 7, 2018—January 9, 2019

Military Judge: Tiernan P. Dolan

For Appellant: *Captain Patrick G. Hoffman* (argued); *Colonel Elizabeth G. Marotta, Lieutenant Colonel Tiffany D. Pond*, and *Major Jack D. Einhorn* (on brief); *Captain Cody Cheek*.

For Appellee: *Captain Allison L. Rowley* (argued); *Colonel Steven P. Haight, Lieutenant Colonel Eric K. Stafford, Major Wayne H. Williams*, and *Captain Joshua B. Banister* (on brief).

Judge MAGGS delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges RYAN, OHLSON, and SPARKS, joined.

———————

Judge MAGGS delivered the opinion of the Court.

Contrary to his pleas, a general court-martial consisting of officer members found Appellant guilty of one specification of violating a lawful general regulation, one specification of abusive sexual contact, and one specification of indecent viewing, in violation of Articles 92, 120, and 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 920, 920c (2012). The court-martial found Appellant not guilty of one specification of sexual assault. The court-martial sentenced Appellant to be reduced to the grade of E-1 and to be discharged from the service with a bad-conduct discharge. The convening authority approved the sentence as adjudged. The United States Army Court of Criminal Appeals (ACCA) set aside and dismissed with prejudice the specification of violating a lawful general regulation but af-

firmed the remaining findings and affirmed the sentence. *United States v. Nicola*, No. ARMY 20150781, 2018 CCA LEXIS 159, 2018 WL 4309712 (A. Ct. Crim. App. Mar. 28, 2018).

Appellant now contends that the evidence was legally insufficient for the court-martial to find him guilty of indecent viewing. We disagree.

## I. Background

The events in this case took place on October 10, 2014, at or near Camp Hovey in the Republic of Korea. Following an evening of excessive drinking, Appellant escorted Corporal AA out of a bar, helped her walk through an alleyway, and took her in a taxi back to her barracks. Corporal AA was very intoxicated at the time. She had previously drunk at least four beers and three shots of tequila. She could not speak clearly, she could not walk without Appellant's assistance, she vomited in the alleyway and in the taxicab, she urinated in her jeans, and she fell over when moving from the taxi toward the barracks.

Appellant and Corporal AA entered Corporal AA's barracks room with Specialist Jessica Long. After Corporal AA lay down on her bed, Specialist Long repeatedly told Appellant that they both should leave. Specialist Long then departed, but Appellant remained in the barracks room with Corporal AA. Less than an hour later, Specialist Long returned with Specialist Megan Scott. When they knocked on the barracks room door, there was no answer. Some minutes later, they returned with their platoon sergeant, Staff Sergeant Daniel Everett. When they again knocked on the door, Appellant answered. He informed Specialist Long that Corporal AA was taking a shower in the bathroom connected to her barracks room. Appellant left at this point. Specialist Long and Specialist Scott then helped Corporal AA out of the shower. Corporal AA was still heavily intoxicated.

Corporal AA subsequently testified that Appellant had placed his hand on her underwear and rubbed her genital area while they were in the alleyway outside of the bar. When asked what happened next, she responded that the next thing she could remember was sitting naked in her bathroom shower. She testified that Appellant was in the

shower with her, that he pulled back her hair, and that he put his penis in her mouth without her consent. She further testified that her private areas were exposed.

Appellant provided a different account of what transpired while he was in Corporal AA's barracks room. He testified:

> We get inside the room and [Corporal AA] tries to head to the bed and I say negative, take a shower. A cold shower usually works for me, I guess a mental thing. So immediately she turns around and takes off her top, I turn my back and hear the belt and everything come off, takes off her clothes and then all of a sudden, past my head goes pants flying and I hear her running to the bathroom and the door slam closed.

Appellant admitted that, when this happened, he briefly saw CPL AA in her bra.

Appellant testified that he subsequently checked on Corporal AA twice while she was in the bathroom taking a shower. In his words, "the first time I yelled, hey are you okay, I get up, knock on the door, you alright. She says, yes, I'm good, I want to stay in here a little longer, and I'm like alright cool." With respect to the second time, Appellant testified:

> [I] yelled at her again, this time I didn't get a response, so once I went to the door, knocked on the door, still no response, so I actually open up the door. I pulled the curtain back, kind of like hiding my body behind the curtain and I push her on the shoulder and I'm like are you alright, but before that I actually tapped the curtain and then I did that. Pushed her shoulder, top left shoulder, like you alright and she was like yes, I'm good, the water feels good.

Appellant testified that he did not see Corporal AA's frontal area while she was in the shower.

The Government charged Appellant with four offenses. The first offense was violating a lawful general regulation in violation of Article 92, UCMJ, by "wrongfully engaging in a prohibited relationship" with Corporal AA. Although the court-martial found Appellant guilty of this offense, the

ACCA set the finding aside and dismissed it with prejudice. *Nicola*, 2018 CCA LEXIS 159, at *8, 2018 WL 4309712, at *3. The second offense was abusive sexual contact of Corporal AA in violation of Article 120, UCMJ, by "stick[ing] his hand down her pants and touch[ing] her vulva" when she was incapable of consenting. The court-martial found Appellant guilty of this offense, the ACCA affirmed, and Appellant does not challenge this finding on appeal. The third offense was sexual assault of Corporal AA in violation of Article 120, UCMJ, by "penetrat[ing] her mouth with his penis" when she was in capable of consenting. The court-martial found Appellant not guilty of this offense. The fourth offense was indecent viewing in violation of Article 120c, UCMJ, by "knowingly and wrongfully view[ing] the private area of [Corporal AA] without her consent, and under circumstances in which she had a reasonable expectation of privacy." The court-martial found Appellant guilty of this offense, and the ACCA affirmed. Appellant challenges this ruling on appeal, arguing that the evidence was legally insufficient.

## II. Discussion

### A. Elements of the Offense and Standard of Review

Article 120c(a)(1), UCMJ, establishes the offense of "[i]ndecent viewing" by providing:

> Any person subject to this chapter who, without legal justification or lawful authorization—
>
> (1) knowingly and wrongfully views the private area of another person, without that other person's consent and under circumstances in which that other person has a reasonable expectation of privacy;
>
> . . . .
>
> is guilty of an offense under this section and shall be punished as a court-martial may direct.

10 U.S.C. § 920c(a)(1). The term "[p]rivate area" means "the naked or underwear-clad genitalia, anus, buttocks, or female areola or nipple." *Id.* § 920c(d)(2). The term "circumstances in which that other person has a reasonable expectation of privacy," under the relevant definition, means "circumstances in which a reasonable person would believe that a private area of the person would not be visible to the public." *Id.*

§ 920c(d)(3)(B). Interpreting this statutory language, the *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), now indicates that offense of "[i]ndecent viewing" has three elements:

> (a) That the accused knowingly and wrongfully viewed the private area of another person;
>
> (b) That said viewing was without the other person's consent; and
>
> (c) That said viewing took place under circumstances in which the other person had a reasonable expectation of privacy.

*MCM* pt. IV, para. 45c.b.(1)(a)−(c). Although this listing of the elements of Article 120c(a)(1), UCMJ, was not included in the *MCM* at the time of trial, we conclude—and Appellant does not contest—that it accurately states the elements of Article 120c(a)(1), UCMJ, at the time of Appellant's conduct.[1]

A finding of guilt is legally sufficient if any rational factfinder, when viewing the evidence in the light most favorable to the government, could have found all essential elements of the offense beyond a reasonable doubt. *United States v. Webb*, 38 M.J. 62, 69 (C.A.A.F. 1993) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). When applying this test for legal sufficiency, " 'this Court is bound to draw every reasonable inference from the evidence of record in favor of the prosecution.' " *United States v. McGinty*, 38 M.J. 131, 132 (C.M.A. 1993) (quoting *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A. 1991)).

## B. Legal Sufficiency of the Evidence

The Government argues that the evidence was legally sufficient to support the court-martial's general finding of guilt as to the indecent viewing charge under two theories.[2]

---

[1] The current version of Article 120c(a)(1), UCMJ, applies to conduct occurring after June 28, 2012. *MCM* pt. IV, para. 45c., Note (2016 ed.). The events at issue in this case took place in 2014. A listing of elements of the offense of indecent viewing in violation of Article 120c(a)(1), UCMJ, did not appear in pt. IV of the *MCM* until 2016.

[2] Under Rule for Court-Martial (R.C.M.) 918(a), a general finding of guilt does not indicate the facts upon which the finding

One theory is that Appellant indecently viewed Corporal AA when she was in her barracks room. The other theory is that Appellant indecently viewed Corporal AA when she was in the shower. We can affirm the finding of guilt if either theory is legally sufficient. As we explained in *United States v. Brown*, "[a] factfinder may enter a general verdict of guilt even when the charge could have been committed by two or more means, as long as the evidence supports at least one of the means beyond a reasonable doubt." 65 M.J. 356, 359 (C.A.A.F. 2007) (citing *Griffin v. United States*, 502 U.S. 46, 49–51 (1991); *Schad v. Arizona*, 501 U.S. 624, 631 (1991) (plurality opinion)). In this case, we find the evidence legally sufficient to support each of the Government's theories.

### 1. Indecent Viewing in the Barracks Room

The Government makes a three-step argument in support of the theory that Appellant indecently viewed Corporal AA in her barracks room. First, the court-martial could have concluded that Appellant was not telling the truth when he testified that Corporal AA voluntarily disrobed herself in the barracks room. Second, the court-martial could have concluded that it was Appellant who removed Corporal AA's clothes. Third, with this understanding of the facts, the court-martial could have found that Appellant then viewed a private area of Corporal AA, without her consent, when she had a reasonable expectation of privacy.

Appellant contests the Government's argument on two grounds. First, Appellant contends that the Government's argument improperly relies on a theory of liability that the Government did not present at trial. Appellant asserts that the Government argued at trial that an indecent viewing occurred in the barracks simply because Appellant admitted to seeing Corporal AA in her bra. Appellant argues that this theory is obviously incorrect because a person who voluntarily disrobes in front of another person lacks a reasonable

---

rests. Appellant could not have requested special findings as to matters of fact because special findings are authorized only in courts-martial composed of a military judge alone. R.C.M. 918(b). Appellant could have requested a bill of particulars to obtain more precise information about the Government's theory or theories of liability, R.C.M. 906(b)(6) & Discussion, but did not do so.

expectation of privacy. Appellant further argues that the Government may not now change its theory on appeal.

We agree that "[a]n appellate court cannot affirm a criminal conviction on the basis of a theory of liability not presented to the trier of fact." *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (citing *Chiarella v. United States*, 445 U.S. 222, 236–37 (1980)). But in this case, the Government is not presenting a new theory. Trial counsel asserted throughout the Government's findings argument that the court-martial should not believe Appellant's account of what happened in the barracks room. Trial counsel specifically addressed Appellant's testimony that Corporal AA disrobed herself. "In reality," trial counsel argued, "when Corporal [AA] got up from the bed it is unlikely she was sober enough to get up on her own. It is unlikely she was sober enough to take off all of her clothes by herself." Trial counsel further argued: "So we know in reality, even though he says all he saw was her wearing her bra, we really know that he facilitated all of her clothes coming off." The record also makes clear that defense counsel was aware of this theory. Defense counsel argued on findings that there was no DNA evidence to support the Government's theory that Appellant took Corporal AA's clothes off. Defense counsel asked, rhetorically, "if there's an accuser who says she was drunk and doesn't remember everything why not swab that bra and see who took that off?" Accordingly, we conclude that the theory that the Government relies on now "was one of the alternative theories of liability presented by the Government at trial, not a different theory." *Ober*, 66 M.J. at 405.

Second, Appellant contends that the evidence does not support the Government's theory. Appellant emphasizes that the only testimony about what happened in the bedroom came from Appellant. Appellant's testimony, as described above, was that Corporal AA removed her own top in front of Appellant. There was no testimony from Corporal AA or anyone else that Appellant disrobed Corporal AA. The Government responds that the court-martial could have disbelieved Appellant's testimony and reached the opposite conclusion.

We agree with the Government. In a criminal trial, the accused has a right to testify. *See Rock v. Arkansas*, 483 U.S.

44, 52 (1987). But one risk of testifying, recognized long ago, is that the trier of fact may disbelieve the accused's testimony and then use the accused's statements as substantive evidence of guilt "in connection with all the other circumstances of the case." *Wilson v. United States*, 162 U.S. 613, 620−21 (1896). As the Supreme Court has said, "false testimony, knowingly and purposely invoked by [the] defendant, [may] be used against him." *Allen v. United States*, 164 U.S. 492, 500 (1896). Under this principle, the court-martial could have believed that Appellant was lying when he testified that Corporal AA disrobed herself, and then used his statements to find that the opposite was true.[3]

Some courts have recognized a limitation on the principle that the trier of fact may disbelieve the accused's testimony and use it against the accused. The United States Court of Appeals for the Eleventh Circuit, for instance, appears to require "some corroborative evidence of guilt" before concluding that "the defendant's testimony, denying guilt, may establish, by itself, elements of the offense." *Brown*, 53 F.3d at 314−15. Such a requirement of additional evidence may reflect a concern, expressed by some other courts, that in an extreme case " '[i]f negative inferences, based on demeanor evidence, were adequate in themselves to satisfy a rational juror of guilt beyond a reasonable doubt, appellate courts might not be able to provide meaningful review of the sufficiency of evidence.' " *United States v. Zafiro*, 945 F.2d 881, 888 (7th Cir. 1991) (Posner, J.) (quoting *United States v. Jenkins*, 928 F.2d 1175, 1179 (D.C. Cir. 1991)), *affirmed on other grounds*, 506 U.S. 534 (1993). *Accord Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir. 1952) (Hand, L., J.). The

---

[3] An instructive example of this principle of criminal law appears in *United States v. Brown*, 53 F.3d 312 (11th Cir. 1995). The defendant in that case challenged the legal sufficiency of his conviction for money laundering. *Id.* at 313. The government was required to prove that the defendant "took part in a financial transaction with money he knew was obtained illegally." *Id.* The defendant testified that he did not know that the person with whom he transacted was in the drug business. *Id.* Upholding the defendant's conviction in connection with this transaction, the court ruled that "the jury, hearing [the defendant's] words and seeing his *demeanor*, was entitled to disbelieve [his] testimony and, in fact, to believe the opposite of what [he] said." *Id.* at 314.

Supreme Court does not appear to have addressed this specific issue, but it has cited these cases with approval. In *Wright v. West*, 505 U.S. 277, 296 (1992), the Supreme Court concluded that a jury was "entitled to discount [the defendant's] credibility on account of his prior felony conviction" and was "further entitled to consider whatever it concluded to be perjured testimony as affirmative evidence of guilt." In reaching this conclusion, the Supreme Court relied on *Dyer,* 201 F.2d at 269, and *Zafiro,* 945 F.2d at 888, in addition to its 1896 decision in *Wilson*, 162 U.S. at 620–21. 505 U.S. at 296. Consistent with this possible limitation, at oral argument in this case, the Government acknowledged that in the absence of any other evidence, the panel's mere disbelief of Appellant's testimony would be insufficient to convict him. Recording of Oral Argument at 13:05−13:36, *United States v. Nicola*, No. 18-0247 (C.A.A.F. Nov. 7, 2018).

Assuming without deciding that some additional evidence is required, beyond the members disbelieving the accused, the requirement is easily met in this case.[4] It is undisputed that Corporal AA was clothed when she entered the barracks room with Appellant and Specialist Long, that Appellant and Corporal AA were the only two persons in the room after Specialist Long departed, and that Corporal AA was later found naked in the shower. Testimony further established that Corporal AA was very intoxicated and had difficulty with simple actions such as walking and talking. If Appellant was untruthful in saying that Corporal AA disrobed herself, the court-martial rationally could have inferred that Appellant disrobed her. We note further that

---

[4] Military Rule of Evidence (M.R.E.) 304(c)(3) provides that "[c]orroboration is not required for a statement made by the accused before the court by which the accused is being tried." This rule addresses only the admissibility of the accused's statement into evidence. M.R.E. 304(c)(3) does not address the question of when the trier of fact may disbelieve the accused and then use his statements to find that the opposite was true. (We note that the version of M.R.E. 304 applicable to this case is found in Exec. Order No. 13,643 of May 13, 2013, 78 Fed. Reg. 29,559 (May 21, 2013), and printed in the *Supplement to Manual for Courts-Martial, United States, Military Rules of Evidence* (2012 ed.). In 2016, the President amended M.R.E. 304 in Exec. Order No. 13,730 of May 20, 2016, 81 Fed. Reg. 33,331 (May 26, 2016)).

various apparent inconsistencies in Appellant's testimony regarding Corporal AA's clothing may have caused the court-martial to question Appellant's truthfulness. Accordingly, the evidence was legally sufficient for the court-martial to have found Appellant guilty of indecently viewing Corporal AA on the theory that Appellant saw her in the bedroom after Appellant removed her clothes.

### 2. Evidence of Indecent Viewing in the Shower

The Government also argues that the court-martial could have found that Appellant indecently viewed Corporal AA when she was in the shower. As described above, Corporal AA testified that Appellant had entered the shower when she was sitting naked with her private areas exposed. She also testified that she was still heavily intoxicated and felt nauseous. Appellant himself testified that the bathroom door was closed, that Corporal AA was behind a shower curtain, and that Corporal AA did not invite him to enter. Accordingly, the Government asserts, the evidence was legally sufficient for the court-martial to find that Appellant viewed her private areas without her consent and when she had a reasonable expectation of privacy.

Appellant contests the Government's theory on four grounds. First, Appellant again argues that the Government has changed its theory of liability on appeal. Appellant asserts that at trial the Government's theory was only that Appellant indecently viewed Corporal AA in the shower when he checked on her well-being. That theory, he contends, was incorrect because he testified that he did not see her private area and because he had a lawful justification for entering the bathroom when she became unresponsive. Appellant contends again that the Government may not change its theory of liability on appeal.

We do not agree that the Government has changed its theory of liability. At trial, the Government called into question Appellant's testimony that he merely reached into the shower to check on Corporal AA. The Government contended that the reality was that Appellant took off his clothes and entered the shower. Appellant thus knew that one possible theory of liability was that he viewed Corporal AA when she was naked in the shower. Appellant took steps to defend

against this theory. After Appellant testified about entering the bathroom to check on Corporal AA, defense counsel asked Appellant: "Did you see her front—frontal area?" Appellant responded, "No, I did not see her frontal area, sir." And in argument on findings, defense counsel argued that "[g]overnment counsel's rendition of an indecent viewing is incorrect." Defense counsel emphasized that he did not see any private area and that he was helping Corporal AA while she was in the shower. Again, we conclude the Government's theory on appeal was one of the theories that the Government presented at trial.

Second, Appellant argues that the Government cannot rely on the theory that he indecently viewed Corporal AA in the shower because the Government also charged him with sexually assaulting Corporal AA in the shower. He asserts that in any case alleging a sexual assault on an unclothed person, a finding of indecent viewing from the same incident would constitute an unreasonable multiplication of charges. We agree that charging an accused with both sexual assault and another sexual offense arising out of a single incident might be an unreasonable multiplication of charges depending on analysis in the particular case of the factors identified in *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001). *Compare, e.g., United States v. Gatewood*, No. NMCCA 201000142, 2011 CCA LEXIS 60, at *19, 2011 WL 1127054, at *6 (N-M. Ct. Crim. App. Mar. 29, 2011) (holding there was an unreasonable multiplication of charges where the accused was charged with aggravated sexual assault and indecent conduct), *with United States v. Feldkamp*, No. ACM 38493, 2015 CCA LEXIS 172, at *35−40, 2015 WL 3536193, at *11−12 (A.F. Ct. Crim. App. May 1, 2015) (holding there was no unreasonable multiplication of charges for findings when the accused was charged with sexual assault and indecent conduct). But even if there was an unreasonable multiplication in this case, Appellant has not explained—and we fail to see—how Appellant has suffered any prejudice because Appellant was found guilty of only indecent viewing. *Cf. United States v. Roderick*, 62 M.J. 425, 433 (C.A.A.F. 2006) (finding prejudice when the accused was found guilty of more than one unreasonably multiplied charge).

Third, Appellant argues that the panel could not have found that he indecently viewed Corporal AA's private area because he testified that he only entered the shower after she became nonresponsive. In such circumstances, he contends, his viewing was not wrongful because he was properly checking on her safety. We agree that a viewing done for the purpose of checking on someone's health and well-being would not necessarily be wrongful. But as explained above, the court-martial could have disbelieved Appellant when he testified that his motivation for entering the shower was merely to check on Corporal AA's condition. Given the circumstances, the panel could have inferred instead that Appellant had a wrongful motive.

Finally, Appellant repeatedly stresses that the court-martial found him not guilty of sexually assaulting Corporal AA in the shower. He appears to suggest that the court-martial panel must have rejected Corporal AA's testimony about what happened in the shower as untruthful. But the panel rationally could have believed that Appellant indecently viewed Corporal AA in the shower even if it concluded that Corporal AA's testimony did not establish all of the elements of sexual assault beyond a reasonable doubt. *See United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) ("Defendants are generally acquitted of offenses, not of specific facts, and thus to the extent facts form the basis for other offenses, they remain permissible for appellate review."). And even if there were some inconsistency in finding Appellant guilty of indecent viewing but not guilty of sexual assault, the inconsistency would not make the finding of indecent viewing legally insufficient. "We follow the Supreme Court's admonition that it is 'imprudent and unworkable' to allow an accused 'to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them.'" *United States v. Emmons*, 31 M.J. 108, 112 (C.M.A. 1990) (quoting *United States v. Powell*, 469 U.S. 57, 66 (1984)).

Therefore, the evidence was also legally sufficient for the court-martial to have found Appellant guilty of indecently viewing Corporal AA when she was in the shower.

## III. Judgment

The decision of the United States Army Court of Criminal Appeals is affirmed.