**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Byron Shane CHUBBUCK, Defendant–Appellant, Cross–Appellee.**

Nos. 93–2068, 93–2097.

United States Court of Appeals,
Tenth Circuit.

Aug. 17, 1994.

Jeffrey J. Buckels, Albuquerque, NM, for defendant/appellant.

Rhonda P. Backinoff, Asst. U.S. Atty., Albuquerque, NM (Larry Gomez, U.S. Atty., with her on the brief), for plaintiff/appellee.

Before EBEL, Circuit Judge, BARRETT, Senior Circuit Judge, and McKAY, Circuit Judge.

EBEL, Circuit Judge.

Defendant–Appellant Byron Shane Chubbuck ("Chubbuck") appeals from the district court's denial of his motion to suppress evidence of a methamphetamine lab that law enforcement agents seized during a search of his apartment. Chubbuck claims that the police executed a search warrant without his presence and without exigent circumstances. Subject to his right to appeal the denial of his suppression motion, Chubbuck conditionally pled guilty to three felony counts: 1) possession of a listed chemical, acetic anhydride, with the intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(d)(1) and 18 U.S.C. § 2; 2) possession of another listed chemical, acetone, with the intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(d)(1) and 18 U.S.C. § 2; and 3) possession of a three-neck round bottom flask with the intent to manufacture methamphetamine, in violation of 21 U.S.C. § 843(a)(6).

In addition, the United States cross-appeals Chubbuck's sentence, contending that the district court improperly departed downward three levels due to Chubbuck's post-arrest religious activities and drug rehabilitation. We affirm the district court's denial of Chubbuck's motion to suppress, but reverse the district court's downward departure and remand for resentencing.

## BACKGROUND

Government agents received information from confidential informants that Chubbuck and his girlfriend, Juliette Mahan, were operating a methamphetamine lab in their apartment in Albuquerque. The informant related having seen, two weeks prior, one gallon of ether, a dangerous and volatile chemical used to produce methamphetamine, and other lab equipment. Within 72 hours of receiving this information, the police obtained a warrant to search the apartment.

The agents executed the warrant on the same day, June 4, 1992, that they received it. Because the officers obtained a daytime warrant, they could only execute it between 6:00 a.m. and 10:00 p.m. However, they arrived at the apartment at approximately 9:55 p.m. Chubbuck suggests, and the government disputes, that the police knew he was not home because they noticed that his motorcycle was not in the parking lot. However, he does not suggest that they knew Mahan was not home. In any case, the police knocked and announced their presence, and then kicked in the door after they received no response. Inside, the police found a stored methamphetamine lab, including some chemicals. Chubbuck and Mahan were located outside the apartment soon after and arrested.

Chubbuck and Mahan were indicted on the three counts relating to possession of listed chemicals and drug lab paraphernalia listed above. Chubbuck sought to suppress the evidence found in the search of his apartment, claiming that the police could not execute the search warrant without his or Mahan's presence unless they could demonstrate exigent or other special circumstances. The government disputed this claim, but nonetheless argued that exigent circumstances existed due to the need to seize and neutralize the gallon of ether. One agent testified that a gallon of ether has the explosive potential of a 500-pound bomb. The district court found that there was "sufficient justification in addition to probable cause to enter the premises in the absence of the Defendants," due to the ether danger and the fact that the police would have had to wait until 6:00 a.m. on June 5th to neutralize the ether if they did not execute the warrant on the night of June 4.

Chubbuck conditionally pled guilty to the charges against him, subject to his right to appeal the suppression issue. Prior to sen-

tencing, Chubbuck moved for a reduction in his offense level due to his acceptance of responsibility and for a downward departure due to post-arrest drug and personal rehabilitation. At the sentencing hearing on February 10, 1993, the district court granted both of Chubbuck's requests, and sentenced him to 51 months imprisonment.

Chubbuck filed a timely notice of appeal on the suppression question. The government then timely filed its notice of appeal on the downward departure issue.

## I. SEARCH OF UNOCCUPIED APARTMENT

■ Chubbuck argues that the police must show some exigent or special circumstances beyond probable cause to break into and enter an unoccupied dwelling. He argues that searches of unoccupied dwellings give rise to greater risks of police abuse than normal searches, and should thus require a greater showing of necessity. In particular, he argues that 1) there is a greater likelihood of property damage because the police will have to break locked doors that might otherwise be opened if the occupants were present; 2) there is a greater risk that the police will utilize the warrant to conduct a general search because there is no one present to monitor the search; and 3) there is a greater risk of police pilferage. While we acknowledge the dangers involved in the search of unoccupied homes, we conclude that there is ultimately no support for Chubbuck's position. Chubbuck cites no federal case law to support the proposition that the police may search an unoccupied home pursuant to a warrant only upon demonstrating exigent circumstances or some other heightened showing.[1]

Indeed, the only precedent in the federal courts of appeals is to the contrary. The

Third and the Fifth Circuits have held that police may search a dwelling even when the occupant is not present. *United States v. Gervato*, 474 F.2d 40, 41 (3d Cir.), *cert. denied*, 414 U.S. 864, 94 S.Ct. 39, 38 L.Ed.2d 84 (1973); *Payne v. United States*, 508 F.2d 1391, 1394 (5th Cir.), *cert. denied*, 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975). *See also*, Wayne R. LaFave and Jerold H. Israel, 1 Criminal Procedure § 3.4(g) at 230 (1984) ("No special showing is needed to execute a search warrant for premises in the absence of the occupant, as such execution is not significantly different from that which would otherwise occur."); *United States v. Daniel*, 667 F.2d 783, 785 (9th Cir.1982) ("Neither Fed.R.Cr.P. 41(d) nor the Fourth Amendment requires that the owner of the premises searched be present at the time of the inventory."); *United States v. Agrusa*, 541 F.2d 690, 697–98 (8th Cir.1976) ("What authority there is holds that unannounced and forcible entries into vacant premises, even homes, in order to conduct a search, are constitutional in the *absence* of exigent circumstances, provided that the search and seizure is pursuant to a warrant and reasonable under the circumstances."), *cert. denied*, 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977). *Gervato* found that concerns about general warrants and police pilferage were unfounded because of the protections provided by federal law. 474 F.2d at 45. For example, the requirement of judicial supervision in obtaining a warrant reduces the possibility of a general search. Pilferage is made less likely by the fact that only certain civil officers are authorized to conduct a search pursuant to a warrant, an inventory of seized items is required, and this inventory must be made in the presence of a person other than the applicant for the warrant. Fed.R.Crim.P. 41(c)(1) and 41(d); *Gervato*, 474 F.2d at 45.[2] Further, because the execution of search warrants

---

1. Chubbuck cites Wayne R. LaFave, 2 Search and Seizure § 4.7(c) at 267–70 (1987) for the proposition. However, LaFave stops short of endorsing the argument, merely suggesting that it "is not devoid of merit." *Id.* at 269.

2. Fed.R.Crim.P. 41(d) reads:

The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken *or shall leave the copy and receipt at the place from which the property was taken.* The return shall be made promptly and shall be accompanied by a written inventory of any

often requires that the occupants of a home be secured and multiple officers are commonly present, the presence of an occupant may provide little safeguard against these dangers. *Gervato,* 474 F.2d at 45.

Indeed, the occupant of a dwelling identified in a search warrant has no authority to prevent officers from executing a warrant on his or her home. *Payne,* 508 F.2d at 1394. Legitimate police searches that have been justified by probable cause may be hampered while the police wait for an occupant to return to a dwelling. *Id.*

We thus hold that it was reasonable here for the police to search Chubbuck's apartment pursuant to the warrant even when he was not present and without exigent circumstances. We thus affirm the district court's denial of Chubbuck's motion to suppress, and do not need to reach the issue of whether the district court correctly found that exigent circumstances existed in this case.

## II. DOWNWARD DEPARTURE

■ The district court departed from its original calculated offense level of 21 to 18, based on Chubbuck's behavior since his arrest. Accordingly, it sentenced Chubbuck to 51 months—at the low end of the applicable range of 51 to 63 months—instead of the 70 to 87 months to which he would be subject with an offense level of 21 and past criminal history. The original offense level of 21 included a two point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.

The district court heard evidence that, through contact with a prison minister, Chubbuck has been able to control his drug problem and has become less selfish. The district court found:

I am not finding or ruling that simply because a person, while incarcerated, at-

tends religious services is a basis for downward departure. It's that in this instance this defendant's participation in religious services, to my mind, from all of the evidence presented ... affected a very significant change in the defendant's conduct and attitudes towards life in terms of, my mind, really giving up, finally, a long history of drug abuse and drug usage, as well as changing an attitude from that [seen] of typical drug users to one who is now caring not only about himself but about other people.

*Sentencing Hearing Transcript at 17–18.*

■ The sentencing judge may impose a sentence outside of the prescribed guideline if the judge finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S.S.G. § 5K2.0; 18 U.S.C. § 3553(b). We review de novo whether a particular mitigating or aggravating circumstance is adequately considered in the guidelines. *United States v. Ziegler,* 1 F.3d 1044, 1047 (10th Cir.1993).

We have recently held that drug rehabilitation is adequately considered in the guidelines' adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, and thus cannot provide grounds for departure, "even in rare circumstances." *Id.* at 1047–49. Indeed, the conclusion that drug rehabilitation is adequately considered in the guidelines is stronger in this case than when *Ziegler* was decided, because the Application Notes to § 3E1.1 have been amended since the version applicable in *Ziegler.* The Notes now make it explicit that "post-offense rehabilitative efforts (*e.g.* counseling or drug treat-

---

property taken. The inventory shall be made in the presence of the applicant for the warrant and the person from whose possession or premises the property was taken, *if they are present, or in the presence of at least one credible person other than the applicant for the warrant or the person from whose possession or premises the property was taken,* and shall be verified by the officer.

(emphasis added). Rule 41(d) impliedly allows for a search in cases where the occupant of a home is not present at the search. Otherwise, the underlined language in Rule 41(d) would have no meaning. It does not, of course, answer whether exigent circumstances are required.

ment)" are an appropriate factor to consider in the acceptance of responsibility determination. U.S.S.G. § 3E1.1, Application Note 1(g) (1992).[3]

Thus, to the extent that the district court in this case relied upon Chubbuck's drug rehabilitation as a basis for downward departure, we must reverse his sentence. Chubbuck argues that his case is different from *Ziegler* because the district court in the instant case also noted his profoundly changed attitude towards others that resulted from his religious participation. However, we must still reverse the downward departure for two reasons. First, our review of the record indicates that the drug rehabilitation was the crucial aspect of the judge's decision to depart from the guidelines. The attitude change the district court cited was one from that "of typical drug users to one who is now caring not only about himself but about other people." Second, the religious guidance Chubbuck has received and the progress he has made are also adequately considered in the acceptance of responsibility section of the guidelines. U.S.S.G. § 3E1.1. As noted, post-offense rehabilitative efforts, including counseling, are a factor to consider in § 3E1.1. *Id.,* Application Note 1(g). Chubbuck's religious guidance falls squarely into this category, and we therefore think that the guidelines have adequately considered Chubbuck's rehabilitation, both in kind and in degree. *Cf. United States v. Gaither,* 1 F.3d 1040, 1042–43 (10th Cir.1993) (remanding for consideration whether rehabilitative efforts will justify a downward adjustment for acceptance of responsibility, but concluding that a departure from the guidelines was not authorized under *Ziegler*). We therefore reverse his sentence and remand for resentencing.

## CONCLUSION

We thus AFFIRM the district court's denial of Chubbuck's motion to suppress. We

REVERSE Chubbuck's sentence and REMAND for resentencing consistent with this opinion.

---

**3.** The November 1992 version of the Sentencing Guidelines is applicable in this case, because Chubbuck was sentenced in February 1993.