UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles MARZANO and Daniel Marzano,
Defendants–Appellants.

Nos. 97–3635, 97–3732.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1998.

Decided Nov. 12, 1998.

Rehearing Denied Dec. 28, 1998.

**400**

Patrick S. Layng (argued), Office of United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellee.

J. Michael McGuinness (argued), Elizabethtown, NC, for Defendant–Appellant in docket No. 97–3635.

George B. Collins (argued), Collins & Bargione, Chicago, IL, for Defendant–Appellant in docket No. 97–3732.

Before POSNER, Chief Judge, and RIPPLE and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

A single indictment charged Charles Marzano with drug offenses, and him and his cousin Daniel with laundering money in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Both were convicted, and Charles was sentenced to 15 years in prison and Daniel to a shade under 4 years. The facts, briefly, are as follows. Charles Marzano was involved in a drug conspiracy with Mark Davino and James Gentile, the latter a bank officer who embezzled money from his bank and invested it in the drug conspiracy. Daniel Marzano was an unsuccessful trader on the Chicago Mercantile Exchange. The conspirators decided to launder their ill-gotten drug and embezzlement funds through Daniel's firm. The resulting infusion of capital was very welcome to him. The plan was that the conspiracy would contribute money to the firm and would get it back both through trading profits and through salaries to Charles and Davino, who would be put on the firm's payroll. As it happened, however, the only money that the conspirators contributed to Daniel's firm was money that Gentile had embezzled; no money derived from the sale of drugs was contributed. There was evidence that Daniel knew that Charles was involved in drug trafficking, but knowledge is not participation and he was not charged with participation in the drug conspiracy.

■ There was some, though not much, evidence that Daniel believed that the money that Charles and Davino were contributing to the firm was money from such dealing. When a partner in Daniel's laundering (who testified against him) asked him "about the monies and where we were going to get it," Daniel told him not to worry; the partner persisted: "Well, when, and where?" And Daniel replied, "He [Charles] fucks around with drugs." None of the money that he laundered, however, was in fact drug money. We need not decide whether there was enough evidence to enable a reasonable jury to infer with the requisite certitude that Daniel intended to launder drug money, for there was sufficient evidence that he intended to launder embezzled funds. But it is worth noting that even if Daniel did intend to launder drug money—and just drug money—in violation of 18 U.S.C. §§ 1956(c)(7)(A), 1961(1)(D), the fact that he actually laundered embezzled funds would not exculpate him. Embezzled funds are another type of illegal proceeds encompassed by the laundering statute, 18 U.S.C. §§ 1956(c)(7)(A), 1961(1)(B), and all that the statute requires is an intent to launder specified types of ill-gotten gain and the laundering of one of the specified types. *United States v. Stavroulakis*, 952 F.2d 686, 690–92 (2d Cir.1992); *United States v. Maher*, 108 F.3d 1513, 1527 (2d Cir.1997). This is an application of the principle of transferred intent: if you deliberately shoot and kill *A*, intending to kill *B*, you are guilty of murdering *A*, even though you had no intention of harming him. *United States v. Martinez*, 16 F.3d 202, 207 (7th Cir.1994); *Guam v. Quichocho*, 973 F.2d 723, 728 (9th Cir.1992); *United States v. Sampol*, 636 F.2d 621, 674 (D.C.Cir.1980). Both the

forbidden state of mind (intending to kill a person) and the forbidden consequence (killing a person) are present.

We need not pause over Charles Marzano's appeal. He argues that the evidence was insufficient to prove his guilt; in fact the evidence was overwhelming. He argues that he should have been tried separately from his cousin, but his cousin has the stronger argument for severance, yet not strong enough, as we are about to see. So let us turn immediately to Daniel's appeal.

■ He argues first that Rule 8(b) of the Federal Rules of Criminal Procedure, which governs the joinder of two or more defendants in the same indictment, forbade charging him and his cousin together, since their crimes were different; in particular, he was not involved (as we noted) in his cousin's drug offenses. The test set forth in the rule is whether the indictment "alleges" that the defendants "participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Notice the reference to allegation; the test is what the indictment charges, not what the evidence shows. *United States v. Curry*, 977 F.2d 1042, 1049 (7th Cir.1992); *United States v. Sophie*, 900 F.2d 1064, 1084 (7th Cir.1990); *United States v. Morrow*, 39 F.3d 1228, 1237 (1st Cir.1994). Notice also that it is neither necessary nor sufficient under Rule 8(b) that the defendants be charged with the identical crimes. The focus is on the underlying acts that constitute criminal offenses. The defendants must be charged with crimes that well up out of the same series of such acts, but they need not be the same crimes. *United States v. Curry*, *supra*, 977 F.2d at 1049–50; *United States v. Alvarez*, 860 F.2d 801, 824 (7th Cir.1988). And obviously the fact that they are the same crimes doesn't mean they can be charged in the same indictment if they bear no relation to each other. *United States v. Schweihs*, 971 F.2d 1302, 1322 (7th Cir.1992); *United States v. Velasquez*, 772 F.2d 1348, 1353 (7th Cir.1985); *United States v. Mac-Donald & Watson Waste Oil Co.*, 933 F.2d 35, 60 (1st Cir.1991). Otherwise the government could indict together every person who committed a federal drug offense in the Northern District of Illinois between January 1, 1997, and December 31, 1997.

The simplest case for joinder is where the defendants are charged with having conspired with each other, period, and thus, in the language of the first clause of the rule, with having "participated in the same act or transaction." *United States v. Diaz*, 876 F.2d 1344, 1355–56 (7th Cir.1989); *United States v. Velasquez, supra*, 772 F.2d at 1353. The indictment alleges that the Marzano cousins conspired with Davino and others to launder money derived from "specified unlawful activity" and that Daniel Marzano in fact deposited in his trading account money that he knew had been embezzled by Gentile. Elsewhere the indictment alleges that Charles Marzano and Davino intended to launder both drug money and the money embezzled by Gentile. So far, so good; the allegations that we have just summarized are sufficient to charge Daniel with participation in a conspiracy with his cousin and Davino to launder proceeds of embezzlement. But there is more to the indictment. The indictment alleges that Gentile had embezzled the money that Daniel laundered in order to help finance a drug conspiracy with which the indictment charges him, Charles Marzano, and Davino. Daniel was not charged with any drug offenses, and so if those offenses are unrelated to the laundering conspiracy they could not properly be joined with the laundering charge under Rule 8(b).

We thus are in the second rather than the first clause of Rule 8(b) and must decide whether the drug offenses can be considered part of the same "series of [illegal] acts or transactions" as the laundering. The answer is yes. We have a chain or circle that connects at one end Charles Marzano's drug dealings in which his cousin was not involved and at the other end the cousin's laundering of the proceeds of Gentile's embezzlement incident to the drug conspiracy. This linkage, missing in *United States v. Velasquez, supra*, 772 F.2d at 1353, satisfies Rule 8(b). *United States v. Delpit*, 94 F.3d 1134, 1143 (8th Cir.1996).

■ Although there was no misjoinder, we add for completeness that the defendants are wrong to argue that Rule 8(b) is not subject

**402**

to the doctrine of harmless error. The Supreme Court in recent years has narrowed the classes of case in which error is reversible per se to a handful consisting of cases in which the elementary forms of criminal law, as they are currently understood, are withheld (for example, the right to a jury trial), *Sullivan v. Louisiana*, 508 U.S. 275, 281–82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); *Rosa v. Peters*, 36 F.3d 625, 634 n. 17 (7th Cir.1994); *Tankleff v. Senkowski*, 135 F.3d 235, 248 (2d Cir.1998); *Riley v. Deeds*, 56 F.3d 1117 (9th Cir.1995), and has explicitly excluded misjoinder. *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986); see also *United States v. Schweihs, supra*, 971 F.2d at 1322; *United States v. Randazzo*, 80 F.3d 623, 628 (1st Cir.1996). It would no doubt be bizarre for the government in one indictment to indict two people for wholly unrelated offenses; but apart from the fact that the government would not save significant resources by doing such a thing, there might not be significant harm to either defendant. There might be; the jury might assume that the fact of joinder indicated some sinister connection warranting more severe punishment for the lesser of the two criminals than if he had been tried alone. That would be one possible construal but another would be that it was as if the grand jury had indicted the defendants separately but to save paper the government printed one indictment on the reverse of the sheet of paper on which the other one was printed. We need not pursue the issue; the point is only that misjoinder does not fall into the small class of cases of error so severe as to require reversal even if not shown to have made any difference in the outcome of the defendant's trial.

■ Even if defendants are properly joined in an indictment, they can be severed for trial under Rule 14 if the economy of the joint trial is outweighed by the prejudicial effect of such a trial on one or more (sometimes all) of the defendants. E.g., *Zafiro v. United States*, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *United States v.*

*Marshall*, 75 F.3d 1097, 1105 (7th Cir.1996); *United States v. Zafiro*, 945 F.2d 881, 885–86 (7th Cir.1991), aff'd under the name of *Zafiro v. United States, supra*; *United States v. Miller*, 116 F.3d 641, 679 (2d Cir.1997). In this case the judge acted well within the scope of his authority in denying the defendants' motions. The economy is considerable because of the interrelatedness of the offenses. In a trial limited to Daniel it would still be proper to prove the drug activities of Charles and of Davino, because those activities furnished their motivation for wanting to launder money through Daniel's firm, and the jury would want to know that motivation in order to have a complete picture. So there would in all likelihood have been considerable duplication of evidence if Daniel had been tried separately from his cousin and such duplication is a cost to society and a major consideration in the joinder of criminal defendants. *Zafiro v. United States, supra*, 506 U.S. at 537, 113 S.Ct. 933; *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir.1987); *United States v. Golb*, 69 F.3d 1417, 1425–26 (9th Cir.1995). And the prejudice of the joint trial to Daniel (and *a fortiori* to Charles) probably was slight. The very fact on which the defendants harp in arguing that they were misjoined in the indictment—the distinctness of Daniel's offense from his cousin's drug offenses—was bound to reduce the harm to Daniel's chances of an acquittal from being tried together with a drug dealer. It was explained to the jury and was easy for them to understand that Daniel was neither a member of the drug conspiracy nor a launderer of drug proceeds. He was the launderer of bank funds embezzled by a member of the drug conspiracy. We doubt that a jury would think that since Daniel was the cousin of a drug dealer, he must be guilty of something too.

■ The remaining and most difficult issue has to do with the impeachment of Daniel by evidence that he had failed to disclose on his application for a seat on the Chicago Mercantile Exchange, as required by the application form, that he had been convicted of a crime. He testified that it was a 12–year–

old misdemeanor which he had forgotten. But he was not allowed to explain on redirect examination that the "conviction" was merely the forfeiture of a $50 bond that he had posted when arrested on a charge of buying a ticket to a Cubs game from a scalper in violation of an obscure Chicago ordinance, and was realistically the equivalent of a traffic violation. Had Daniel been allowed to explain the nature of his conviction, the credibility of his testimony that he had forgotten it when he filled out the form would have been enhanced. We cannot think of any reason why he was not permitted to explain. This was an error, but it was harmless. Not only was the evidence of Daniel's participation in the laundering scheme compelling, but there were other misstatements in the application for the CME seat that could not be explained away as memory lapses—notably, and most damning, concealing the source of the money for the seat he wanted to buy, the source being money embezzled by Gentile from his bank.

Nevertheless, we are distressed that at the oral argument of the appeal the government's lawyer claimed not to have harped on the conviction in his closing argument; the transcript clearly shows that he did (and he was the government's lawyer at the trial)—he referred to "prior convictions" (there was only one) and to "a criminal conviction" and to "his [Daniel's] conviction." Also at argument he said that Daniel had waived in this court any argument that the bond forfeiture was technically a conviction. This is not true; the argument is made in Daniel's opening brief. It does not help Daniel, because at trial he conceded that the bond forfeiture was a conviction. In fact, it is not, but the court can enter a judgment for conviction on the basis of the forfeiture. Ill. S. Ct. R. 556(c), (d). We assume that this is what happened and is why the issue was not presented at trial; in any event, Daniel's brief on appeal does not address the issue with sufficient specificity to preserve it. Still, the government's lawyer should not have misrepresented his closing argument and his opponent's brief. We expect better from the Department of Justice.

The sentencing issues that Daniel raises have insufficient merit to warrant discussion.

AFFIRMED.

RIPPLE, Circuit Judge, concurring.

Although I agree with the result the majority reaches, I respectfully part company with my colleagues on two issues.

In my view, the district court erred in allowing joinder under Federal Rule of Criminal Procedure 8(b). The part of Rule 8(b) relevant to this case provides that "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in . . . the same series of acts or transactions constituting an offense or offenses." The case for joinder must be made on the face of the indictment. The indictment in this case is ambiguous and does not allege with sufficient specificity that Daniel was linked to the drug crimes. Although an inference that Daniel laundered drug money or that Daniel's laundering was used to finance the drug conspiracy might be drawn from the alleged facts scattered throughout the indictment, such guesswork is insufficient to allow joinder.

Federal Rule of Criminal Procedure 7(c)(1) states, in part, that "[t]he indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." When read in conjunction with Rule 8(b), Rule 7(c)(1) requires greater specificity in linking the laundering and drug crimes than this indictment provides. This court has previously noted the specificity requirement in *United States v. Garner*, 837 F.2d 1404 (7th Cir.1987). In deciding whether joinder was improper under Rule 8(b) on the grounds that the indictment failed to allege sufficiently a conspiracy among the co-defendants, the court stated that "[a]n indictment must state all of the elements of the offense charged; it must inform the defendant of the nature of the charge so that he may defend himself; and it must enable the defendant to plead the judgment as a bar to any later prosecution for the same offense." *Id.* at 1412.

The indictment did not sufficiently and specifically link Charles' drug crimes with

Daniel's laundering. Count Twenty-eight merely charges Daniel with laundering of the proceeds of an unlawful activity; it does not specify which unlawful activity that might be—embezzlement or drug dealing. Notably, the overt acts section of that Count only refers to embezzlement. The majority also points out that another count alleges that Charles and Gentile intended to finance their drug operation with embezzled money laundered through Daniel. This attempt at linking the laundering with drugs certainly is not stated on the face of the indictment. The indictment alleges that Gentile embezzled funds for the purpose of purchasing drugs; it does not allege that Gentile embezzled funds to be laundered through Daniel for the purpose of purchasing drugs. There is no allegation that Daniel knew the laundered proceeds had anything to do with drugs. At no point, therefore, does the indictment clearly explain Daniel's "participat[ion] in the ... same series of acts or transactions constituting" a drug conspiracy. Rule 8(b).

Although I think the district court erred in allowing joinder under Rule 8(b), I agree that the error was harmless. *See United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) (holding that harmless error analysis applies to Rule 8 misjoinder). The limiting instructions given by the district court were sufficient to make clear to the jury that it should not consider drug evidence against Daniel.

The issue of the scope of redirect is also troublesome. I agree with the majority that the district court erred in not allowing Daniel to explain the nature of his "conviction." I do not agree that Daniel waived the issue at either the district court or court of appeals level. Daniel's attorney did sufficiently object at trial to the reference to Daniel's bond forfeiture as a conviction. *See* Tr. at 1697–98, 1853. Additionally, Daniel's initial brief in this court clearly raised the argument. *See* Appellant's Br. at 31. Although it is a close issue, I agree that the district court's error was harmless. The manner in which Daniel conducted the affairs of his business is sufficient evidence of Daniel's guilt. The error therefore did not exert "substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

DIANE P. WOOD, Circuit Judge, concurring.

Although I agree with the ultimate result the court reaches, my own review of the evidence persuades me that there was no competent evidence from which an inference could be drawn that Daniel Marzano thought that the money Charles Marzano and Mark Davino were giving to him came from Charles's drug dealings. The one remark cited in the court's opinion indicates only that Daniel knew about Charles's illegal drug activities. I find it too much of a stretch to conclude that Daniel's offhand response to the question about where the money would come from demonstrates that Daniel thought he was laundering the proceeds from drug transactions. I therefore find the discussion of transferred intent, *ante* at 400–401, to be unnecessary on this record. With respect to this part of the opinion, I think it is enough to note that there was ample evidence that Daniel knew he was laundering *embezzled* funds. That in turn is enough to sustain his conviction under 18 U.S.C. § 1956(a)(1)(B)(i).

Indeed, the only relevance of a potential link between Daniel's illegal activities and Charles's drug dealings goes to the questions of the propriety of joining Daniel's case to Charles's under Fed.R.Crim.P. 8(b) and the correctness of the district court's refusal to sever the two cases under Fed.R.Crim.P. 14. Judge Ripple makes a powerful argument that the initial decision to join the two cases in the same indictment violated Rule 8(b). He also rightly notes that we must decide whether joinder was proper by looking at the face of the indictment, not at evidence that later enters the case. I am concerned about relying on a "chain or circle that connects at one end Charles Marzano's drug dealings in which his cousin was not involved and at the other end the cousin's laundering of the proceeds of Gentile's embezzlement incident to the drug conspiracy." *Ante* at 401. That reasoning would justify including practically any unrelated criminal activity of someone's

associate in an indictment, as long as the associate was engaged in some joint criminal activity with the accused person as well. Rule 8(b) requires line-drawing somewhere along this chain, even though it acknowledges the possibility of joining together defendants who have participated in the same "series of acts or transactions constituting an offense or offenses."

For purposes of the charges under § 1956(a)(1)(B)(i), however, the nature of the illegal funds the accused is laundering seems less important to me than the fact that both defendants are alleged to be violating that statute through a connected series of acts and transactions. *Cf. Edwards v. United States*, —— U.S. ——, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998). The government was entitled to prove the exact way in which the statute was violated at the trial. Furthermore, even if this indictment improperly joined Daniel's case to that of Charles and his associates, it is clear that Rule 8(b) violations are subject to the doctrine of harmless error. See *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). The district court here was scrupulous about cautioning the jury not to attribute any of the drug activities to Daniel. Looking at the record as a whole, I am confident that this jury did not confuse either the evidence or the charges that pertained to each person. I do not rely for this on the supposition that a significant percentage of the drug evidence would have been admissible in a trial against Daniel alone, because I have my doubts about that as well. Instead, I rely on the very distinctness of the two charges and the district court's sound handling of the trial.

With these reservations, I concur in the judgment of the court.