**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Barbara E. STEFONEK, Defendant–Appellant, Cross–Appellee.**

**Nos. 98–3343, 98–3398 and 98–3627.**

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1999.

Decided June 3, 1999.

Matthew L. Jacobs (argued), Thomas P. Schneider, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Janice A. Rhodes (argued), Kravit, Gass, Hovel & Leitner, Milwaukee, WI, for Defendant–Appellant.

Before POSNER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

We have before us cross–appeals from a judgment entered after a jury trial for Medicare fraud, tax fraud, and related federal crimes. The jury found the defendant, Barbara Stefonek, guilty and the judge sentenced her to serve 15 months in prison and to pay more than $20,000 in costs of prosecution. Her appeal challenges both her conviction and the order to pay. The government's appeal challenges the district judge's granting the defendant a four–level downward departure in her sentence.

Stefonek, a psychiatric nurse, joined another nurse, Edith Polzin, in creating a series of small businesses that provided nursing and related health care services to Medicare and Medicaid beneficiaries. Stefonek and Polzin placed their personal housekeepers on the payroll of their companies, listing them as maintenance workers, so that the government would reimburse the cost. The two women did not report the reimbursement as personal income to them, and they deducted the cost of the housekeepers from the reported taxable income of the companies. Stefonek also willfully caused the companies to fail to pay federal payroll taxes and then impeded the IRS's efforts to collect them. Her crimes inflicted a loss to the government of approximately $200,000. Although her appeal challenges the sufficiency of the government's evidence, that evidence was abundant; several other issues that she presents are similarly without sufficient merit to warrant discussion. Polzin was also prosecuted, but she pleaded guilty and was sentenced to six months of home confinement and has not appealed.

A multitude of business records were seized from the premises of Stefonek's companies pursuant to a search warrant. The application for the warrant, and an affidavit by federal investigators accompanying the application, specified the place to be searched and the documents to be seized; the warrant repeated the application's description of the place to be searched but not the description of the things to be seized. Stefonek claims that the search exceeded the bounds described in the application and warrant, and it did—the warrant listed only suites 101, 102, and 103 in the building in which her businesses were located and most of the evidence that she seeks to suppress was found in adjacent suite 104. But the match was close enough to satisfy the Fourth Amendment, *United States v. Johnson*, 26 F.3d 669, 694 (7th Cir.1994), especially since the door to the businesses' office said "Suite 101," and the division of the interior into separately numbered suites was obscure.

With respect to the things to be seized, however, all the warrant said was "evidence of crime." That description did

not satisfy the Fourth Amendment's requirement that a search warrant "particularly describ[e] ... the things to be seized." E.g., *United States v. George*, 975 F.2d 72, 75–76 (2d Cir.1992); *United States v. Morris*, 977 F.2d 677, 682 (1st Cir.1992); *United States v. Kow*, 58 F.3d 423, 428–29 (9th Cir.1995); 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.6 (3d ed. 1996). So open-ended is the description that the warrant can only be described as a general warrant, and one of the purposes of the Fourth Amendment was to outlaw general warrants. E.g., *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).

The government argues that since the affidavit which accompanied the application for the warrant contained an adequately particular description of the things to be seized, and since the search itself did not stray beyond the boundaries drawn by that description, "the search warrant was legally sufficient." We would agree if the warrant had incorporated the affidavit by reference, e.g., *United States v. Jones*, 54 F.3d 1285, 1289–92 (7th Cir.1995); *United States v. McGrew*, 122 F.3d 847 (9th Cir. 1997); *United States v. Shugart*, 117 F.3d 838, 845 (5th Cir.1997); 2 LaFave, *supra*, § 4.6(a), pp. 558–59, but it didn't. The Fourth Amendment requires that the *warrant* particularly describe the things to be seized, not the papers presented to the judicial officer (in this case federal Magistrate Judge Gorence) asked to issue the warrant.

██ But we do not think that the consequence of the violation of the Fourth Amendment in this case should be the suppression of the evidence seized, which would in turn require that the defendant be retried and which might even preclude a retrial, since the documents that were seized may be essential to proving her guilt. The seizure caused no harm to the policy that underlies the requirement that a search warrant describe with particulari-

ty what is to be seized. That purpose, which searches pursuant to general warrants subvert, is to make sure that a search pursuant to a warrant does not invade the property and privacy of the individual whose premises are to be searched, and property seized, beyond what is necessary to achieve a valid law enforcement purpose as determined by a judicial officer. In effect the requirement of particularity backs up the requirement that warrants not issue except on probable cause by preventing the searching for and seizure of items that there is no probable cause to believe are either contraband or evidence of a crime. *Maryland v. Garrison, supra*, 480 U.S. at 84–85, 107 S.Ct. 1013; *United States v. Vitek Supply Corp.*, 144 F.3d 476, 480–81 (7th Cir.1998). It does this in two steps. The police or other law enforcement officer who is seeking the warrant must submit to the judicial officer a precise description of what is sought to be seized, so that the judicial officer can determine whether a valid law enforcement purpose would be served by the seizure of all items fitting the description. The description is then written into (or attached to or otherwise incorporated in) the warrant in order to make sure that the law enforcement officer who executes the warrant stays within the bounds set by the issuer.

The second step was omitted in this case, creating a danger that the executing officers would conduct a search, and seize items, that went beyond constitutional limits. Any evidence seized when the constitutional limits were exceeded would have to be suppressed, unless the officers were able to squeeze themselves into the exception to the exclusionary rule that the Supreme Court created in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), for unconstitutional searches conducted in good-faith reliance on a warrant. See also *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984); *Arizona v. Evans*, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995). That would be difficult to do here,

because the defect in the warrant was patent, *United States v. Leon, supra*, 468 U.S. at 923, 104 S.Ct. 3405, as in such cases as *United States v. Kow, supra*, 58 F.3d at 428–29; *United States v. George, supra*, 975 F.2d at 77; and *United States v. Spilotro*, 800 F.2d 959, 968 (9th Cir. 1986).

Yet this actually is a stronger case than *Leon* against applying the exclusionary rule. In·*Leon* the search caused actual damage to the interests protected by the Fourth Amendment; it permitted a search that went further than the amendment allows. The search in this case did not. It conformed to the particular description in the affidavit of the things to be seized, and there is no argument that in issuing the overbroad warrant the magistrate judge wanted the search to be even more limited than the description in the affidavit. (If so, she would have written the limitation into the warrant.) Among the agents who executed the search were the very agents who had prepared the application for the warrant, as in *Massachusetts v. Sheppard*, 468 U.S. at 989 n. 6, 104 S.Ct. 3424; they knew the limited scope of the application; and, to repeat, they did not exceed the limits specified in that application and in the accompanying affidavit. The search would thus have been identical in scope, and exactly the same evidence would have been seized, had the warrant complied with the Constitution, which is to say, had the warrant repeated the application's description of the things to be seized. As in our own *United States v. Jones, supra*, 54 F.3d at 1292, and in *United States v. Bianco*, 998 F.2d 1112, 1117 (2d Cir.1993), the violation did no harm to any of the interests in privacy or property that the Fourth Amendment protects, and so exclusion of the evidence seized under the warrant would, just as in *Leon* and the cases following it, though for a different reason, have been a disproportionate sanction for the violation of the Fourth Amendment.

■ But before leaving the point we should consider whether we may have overlooked another purpose of the requirement of particularity, that of informing the person whose premises are to be searched of the scope of the search, so that he (or, as in this case, she) can monitor the search while it is being conducted and make sure it stays within bounds. The cases do mention this as being an additional purpose of the requirement. E.g., *United States v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), overruled on other grounds in *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); *United States v. Jones, supra*, 54 F.3d at 1290; *United States v. McGrew, supra*, 122 F.3d at 850. If it is, however, it is of limited scope. Nothing in the Fourth Amendment or in the case law elaborating it or in the practice of searches pursuant to warrants requires that searches be confined to times at which the owner or occupant of the premises to be searched is present so that he can monitor the search, e.g., *United States v. Chubbuck*, 32 F.3d 1458, 1460–61 (10th Cir.1994); *United States v. Daniel*, 667 F.2d 783, 785 (9th Cir.1982) (per curiam); *United States v. Gervato*, 474 F.2d 40 (3d Cir.1973), although if someone is· on the premises the police may have to knock and announce their purpose before barging in to conduct the search. *Wilson v. Arkansas*, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). The absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, e.g., *United States v. Ritchie*, 35 F.3d 1477, 1482–83 (10th Cir. 1994); *United States v. Hepperle*, 810 F.2d 836 (8th Cir.1987); *United States v. Bonner*, 808 F.2d 864, 868–69 (1st Cir.1986), is further evidence that the requirement of particular description does not protect an interest in monitoring searches; a warrant cannot enable the occupant to monitor the search if he doesn't see it until the search has been completed. And Rule 41(d) of the Federal Rules of Criminal Procedure, which governs the execution of warrants and is not claimed to violate the Fourth Amendment, provides that the officer tak-

ing property under a warrant shall "give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken ... *or shall leave the copy and receipt at the place from which the property was taken*" (emphasis added)—a formulation that contemplates situations in which the search is made in the absence of the owner or occupant of the premises.

The purpose of handing the occupant (when present) the warrant, like that of the "knock and announce" rule, is to head off breaches of the peace by dispelling any suspicion that the search is illegitimate. *United States v. Hepperle, supra,* 810 F.2d at 839; American Law Institute, *A Model Code of Pre–Arraignment Procedure* 132 (1975); 2 LaFave, *supra,* § 4.12(a), p. 718. This purpose, whatever its precise relation to the Fourth Amendment (*Wilson v. Arkansas* suggests that there may be some), has no relevance to this case; Stefonek was not present when the search was conducted.

And so we were right when we said earlier that the violation of the Fourth Amendment in this case did no harm to any of the interests that the amendment protects, so that exclusion of the evidence seized under the warrant would be a disproportionate sanction. The idea that sanctions should be proportioned to the gravity of the wrong is fundamental, and it has become an important element of the jurisprudence of the Fourth Amendment. E.g., *United States v. Payner,* 447 U.S. 727, 734, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980); *Stone v. Powell,* 428 U.S. 465, 490, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Evidence that the exclusionary rule might require judges to suppress could be essential to the conviction of a criminal, while the violation of the Fourth Amendment that had led to the suppression might have imposed a cost on the criminal that was trivial in relation to the social cost of allowing a guilty criminal to walk. Henry J. Friendly, "The Bill of Rights as a Code of Criminal Procedure," in Friendly, *Benchmarks* 235, 260 (1967). In this case the cost was zero.

Concern with the frequent disproportionality of the sanction of exclusion has led judges to create exceptions to the exclusionary rule, itself a rule of federal common law (that is, of judge-made law) rather than a part of the Fourth Amendment itself and so amenable to judge-made adjustment. We mentioned *Leon;* but the exception that is most pertinent to this case goes by the name of "inevitable discovery" and refuses to suppress evidence seized in an unconstitutional search if it is shown that the evidence would ultimately have been seized legally if the constitutional violation had not occurred. E.g., *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *United States v. Jones,* 149 F.3d 715 (7th Cir.1998); *United States v. Cabassa,* 62 F.3d 470, 472–73 (2d Cir.1995). In other words, just as careless or even willful behavior is not actionable as a tort unless it causes injury, *Restatement (Second) of Torts* § 907 (1977), so there must be a causal relation between the violation of the Fourth Amendment and the invasion of the defendant's interests for him to be entitled to the remedy of exclusion. In a case of inevitable discovery, the defendant would by definition have been no better off had the violation of his constitutional rights not occurred, because the evidence would in that event have been obtained lawfully and used lawfully against him. This is a similar case, the only difference being that here the lack of injury to a protected interest is a certainty rather than merely a probability. We *know* that if the warrant had complied with the Fourth Amendment, the very same evidence would have been seized as was seized, because we know that Magistrate Judge Gorence intended to permit the search and seizure that occurred; it was the very search and seizure specified in the application for the warrant that she issued. We thus know that no lawful interest of Stefonek's was harmed by the constitutional error, and equally that the taxpaying and law-abiding public will be harmed if her conviction is thrown out because of the error. Where a violation of

the particularity requirement of the Fourth Amendment can be shown to have had no causal relation to the scope of the search or to the quantity or character of evidence seized, suppression of the evidence is not a proper sanction.

This is not to say that exclusion is not *in general* the proper sanction for a violation of the Fourth Amendment's requirement of particular description. For in general the defendant will be arguing that if the requirement had been complied with, the evidence used against him would not have been seized because there would have no probable cause to seize *that* evidence—it was outside the scope of a reasonable search. That argument is unavailing here. Just as in the inevitable-discovery cases, we know (and with greater certainty) that compliance would have made no difference in the character or amount of evidence seized.

■■ The causal principle that governs this case like the case of inevitable discovery is distinct from but related to the doctrine of harmless error. A "harmless error" as the term is used in law is a trial error that does not alter the trial's outcome. If it was an error to place in evidence Stefonek's business records, it was not a harmless error in the sense that we can be confident that she would have been convicted anyway; the evidence was important to the government's case. It was the anterior error, the issuance of a general warrant, that was harmless in the sense of not harming any interest that the constitutional prohibition of general warrants protects. The broader principle that encompasses both types of "harmless error," plus the common law principle noted earlier that there is no tort without an injury, is that a litigant may not complain about a violation of rights that does not harm the interest (whether in privacy or in a fair trial) that the rights protect. (There are no "attempted torts.") The principle is applied to virtually all errors, including constitutional errors, that occur in the course of a criminal trial. *Sullivan v. Louisiana*, 508 U.S. 275, 278–79, 113 S.Ct.

2078, 124 L.Ed.2d 182 (1993); *Arizona v. Fulminante*, 499 U.S. 279, 306–07, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *United States v. Marzano*, 160 F.3d 399, 401 (7th Cir.1998). There is an exception for errors deemed to go to the very heart of due process, *id.*, but we know that a violation of the Fourth Amendment is not such an error, because the Supreme Court greatly restricts its use as the basis for a collateral attack on a state conviction. *Stone v. Powell, supra.* The doctrine of harmless error in the traditional sense (harmless trial error) was applied to a Fourth Amendment violation in *Chambers v. Maroney*, 399 U.S. 42, 52–53, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). *Leon, Nix, Stone,* and many other cases show that a Fourth Amendment violation committed before any litigation began, though not a harmless *trial* error, no more automatically invalidates the conviction than a harmless trial error would.

■■ Let us move on now to Stefonek's complaint about the prosecutor's using the conviction of Polzin to impeach statements that Polzin had made out of court and that Stefonek had repeated in testifying in her own defense. Within limits not exceeded here, a witness can be impeached by evidence of a previous conviction. Fed.R.Evid. 609. When the witness's "testimony" consists of her out-of-court declaration that is admissible under an exception to the hearsay rule, the conviction can still be used to impeach that "testimony" in the course of cross-examination of the witness who is testifying to the out-of-court declaration. Fed.R.Evid. 806; *United States v. Robinson*, 783 F.2d 64, 67 (7th Cir.1986); *United States v. Noble*, 754 F.2d 1324, 1330–32 (7th Cir. 1985). But impeachment of an out-of-court declarant with a prior conviction, or anything else, is inappropriate, in fact impossible, if the credibility of the out-of-court declarant is not at issue (so that there is nothing to impeach), which is to say if the declaration is not being placed in evidence for its truth value. *United States*

*v. McClain,* 934 F.2d 822, 833 (7th Cir. 1991); *United States v. Becerra,* 992 F.2d 960, 965 (9th Cir.1993). Stefonek argues that in testifying to statements that Polzin made to her, all she (Stefonek) was trying to establish was that she had heard these statements, not that they were true. Were that the case it would indeed have been improper, as well as inflammatory, for the prosecutor to have brought up Polzin's conviction. But it is not the case. Stefonek's lawyer argued to the jury that she had been above-board about the housekeepers; that the companies' lawyer and accountants had been told about them; and specifically that Polzin had told these professionals about the housekeepers, showing there was no intent to defraud the IRS. This argument depended on the truth of what Polzin had told Stefonek, namely that Polzin had told the lawyer and accountants about the housekeepers.

■ The last issue presented by Stefonek's appeal concerns the district court's order, required by the Internal Revenue Code, that Stefonek pay "the costs of prosecution" of the tax offenses of which she was convicted. 26 U.S.C. §§ 7202, 7206. The quoted term is not defined. The item in issue here is the jury fees, which exceeded $9,000 and thus were almost half the total costs of prosecution that Stefonek was ordered to pay.

Section 1920 of the Judicial Code provides that "a judge or clerk of any court of the United States may tax as costs the following." A list of six items follows none of which can reasonably be read to include jury fees. The introductory paragraph in section 1920, which we have just quoted, does not limit the section to civil cases; and of course much of the Judicial Code applies to criminal proceedings as well as to civil ones. In the absence of any elucidation in either the Internal Revenue Code or the legislative history, the term "costs of prosecution" is most naturally understood as referring to section 1920 costs incurred by the government in successfully prosecuting a criminal defendant. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *United States v. Dunkel,* 900 F.2d 105, 108 (7th Cir.1990), vacated on other grounds, 498 U.S. 1043, 111 S.Ct. 747, 112 L.Ed.2d 768 (1991); *United States v. May,* 67 F.3d 706, 707 (8th Cir.1995). So the judge erred in ordering Stefonek to pay jury fees.

The government in its appeal claims that in departing downward four levels in sentencing Stefonek, thus cutting her sentence by more than 40 percent, the district judge violated the federal sentencing guidelines. He departed downward on three principal grounds. The first was to maintain some reasonable parity with Polzin's sentence, the second to recognize the service that Stefonek had rendered to the community as a skilled and dedicated nurse, and the third to recognize Stefonek's extraordinary family circumstances. The first two grounds were clearly improper, the first in all circumstances and the second in the circumstances of this case. The third was dubious.

■ When two accomplices receive different sentences each of which is in accordance with the guidelines, there is no room for an argument that one or both sentences should be changed to preserve parity between the sentences. The sentencing guidelines were not intended to eliminate all differences in the sentencing of accomplices, so that a bank robber who murdered a teller and the driver of the getaway car would receive the identical sentence. The intent was to eliminate *irrational* sentencing discrepancies. When the discrepancy between two sentences is referable to the guidelines themselves, there is no irrationality and so no basis for a departure in either sentence on the ground that the difference between the sentences is excessive. *United States v. McMutuary,* 176 F.3d 959, 964–66 (7th Cir.1999); *United States v. Meza,* 127 F.3d 545, 549–50 (7th Cir.1996); *United States v. Rodriguez,* 162 F.3d 135, 153 (1st Cir.1998); *United States v. Joyner,* 924 F.2d 454, 459–61 (2d Cir.1991).

■■■■ The "community service" ground for departure approaches the risible. It is based on the services provided by the very businesses that were the vehicle of Stefonek's multiple violations of federal law. The suggestion is of a kind of Robin Hood theory of sentencing, in which innocent beneficiaries of a criminal enterprise are permitted to plead for the criminal. There is no basis for such a departure in the guidelines, *United States v. Wilke*, 156 F.3d 749, 754–55 (7th Cir.1998); *United States v. Morken*, 133 F.3d 628, 630 (8th Cir.1998); *United States v. McHan*, 920 F.2d 244, 248 (4th Cir.1990), and we take this opportunity to emphasize to the district judges of this circuit that no "middle class" sentencing discounts are authorized. Business criminals are not to be treated more leniently than members of the "criminal class" just by virtue of being regularly employed or otherwise productively engaged in lawful economic activity. Cf. U.S.S.G. § 5H1.10. It is natural for judges, drawn as they (as we) are from the middle or upper-middle class, to sympathize with criminals drawn from the same class. But in this instance we must fight our nature. Criminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime.

■■■■ As for the third ground for a downward departure, extraordinary family circumstances, the record reveals that Stefonek is the single mother of a 12–year–old child who has learning problems that mom assists her in overcoming. Imprisoning the mother of a child for even a short period of time is bound to be a wrenching experience for the child, but the guidelines do not contemplate a discount for parents of children. "Family ties and responsibilities and community ties are not ordinarily relevant to determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6. In the word "ordinarily" is some wiggle room, however, as our cases recognize, notably *United States v. Owens*, 145 F.3d 923, 929 (7th Cir.1998).

Two expert witnesses, a psychiatrist and a psychotherapist, gave unrebutted testimony that the learning problems of Stefonek's child will be aggravated by her absence. Despite this evidence, and the fact that the sentencing judge has a broad discretion in departing downward when not blocked by a specific guideline, *Koon v. United States*, 518 U.S. 81, 98–100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), we cannot affirm the sentence. We do not know whether the district judge would have departed downward on the basis of extraordinary family circumstances alone. Nor does the expert testimony indicate that the harm to Stefonek's child from her absence would be greater than the harm to a normal child, or explore what care will be available for the child while Stefonek is in prison. We do know that the child's father is available to assist in taking care of her while Stefonek is in prison, and for all we know, or the record shows, professionals are available to deal with children's learning problems as effectively—probably more effectively—than mothers who are not themselves educational psychologists. These issues require further consideration.

The conviction is affirmed, but the case must be remanded for resentencing in conformity with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.