**UNITED STATES of America, plaintiff,**

v.

**Marsden J. LINK, Jr., Defendant.**

**No. 99 CR 153.**

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 1, 2000.

Brian R. Havey, U.S. Attorney's Office, Chicago, IL, for U.S.

Mitchell D. Kreiter, Thomas A. Gibbons, Michael E. Benz, Kreiter & Gibbons & Associates, Chicago, IL, for defendant.

### *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

In 1999, Mr. Link pleaded guilty to one count of bank fraud. In connection with his sentencing, he moved on several grounds for a downward departure from the sentencing range indicated by the United States Sentencing Guidelines. Because a careful review of the facts of this case persuades me that Mr. Link is entitled to a downward departure on the grounds of extraordinary family circumstances, I grant the motion.

### I.

Mr. Link is 45 years old. He is a single parent of a 14 year old boy, Louis, who is at severe emotional risk. Mr. Link was divorced from the boy's mother in 1994, but his mother had essentially abandoned Louis from birth, telling Mr. Link, "I took care of Louis for nine months when I was pregnant, now it's your turn." She would stay out until early in the morning drinking, and perhaps doing drugs, while Mr. Link cared for Louis. As a small child, Louis would call out for Mr. Link and not his mother because he knew Mr. Link would be there. She was rarely home, leaving Mr. Link and Louis alone at home together. Mr. Link would go to parent-teacher conferences without her. Since Louis's birth, Mr. Link has been his son's only source of emotional support and stability.

In 1988, Mr. Link became aware that his wife had been conducting a long term affair with another man. He tried to keep the family together, but in 1994, his wife served him with divorce papers. Louis, then in third grade, became very upset when told about this and was screaming and crying. His mother started to bring

her boyfriend around, and Louis would make up stories to explain his presence to his own friends, calling the boyfriend "the gardener." In 1994, Louis, then in fourth grade, went to a counseling service for a while. He was very depressed. The divorce became final in 1995. He sees his mother once or twice a month, but Louis says that she still "goes out all the time" and is "busy with her own priorities." She told the probation officer who prepared the presentence report that she would not take custody of Louis if his father was incarcerated, that Louis had never lived with her, and that she did not have enough money to support him. She blamed her divorce on the fact that she felt neglected by her husband because he spent too much time with Louis.

Louis has lived with his father in Lemont, Illinois, since 1995. Mr. Link makes their food, does their laundry, and is available to Louis almost all the time. He carries a beeper so Louis can always reach him. Louis now attends Marist High School, a Catholic school, where he gets A's and B's. The two go to church regularly.

Mr. Link has fears for the mental well-being and religious faith of his son if they are separated. According to Dr. Kenneth Busch, a psychiatrist who examined Louis in connection with Mr. Link's motion in this case, the fears are well-founded. Louis himself is deeply and understandably attached to his father. Louis told Dr. Busch that his mother's "priority's were her first concern, but I had my father." "My mother was never really in the picture," "It was just me and my dad." When asked how he would feel if his father had to go away, Louis became very anxious. "Something would happen to me if dad had to go away." "I would be in despair," "It is not like being emotionally well, and I would be by myself." "I would be a loner and not do anything and would have a hard time getting myself going." According to Dr. Busch, being separated from his father would have a devastating

impact on Louis and put at risk all the progress he has made since his mother abandoned him, first in spirit, then in flesh.

Louis is not close to his paternal grandparents, who are in their early 70s, live in Florida and are in poor health. He is not close to his paternal aunt in Minnesota who has three children ("she doesn't count"), and has not seen her for several years. He does not think it would be possible to live with his uncle in Deerfield, Illinois, who has two children, or his paternal aunt in Elmhurst, Illinois, who has a young child.

Dr. Busch concluded that there is an unusually special relationship between Mr. Link and Louis. His mother "totally emotionally abandon[ed]" him within his first year of life. The psychiatrist stated that children who have such abandonment have "unique feelings of abandonment depression which can continue all through childhood." But because of his relationship with his father, "an unusual bond from a psychiatric point of view," he is still in "relatively good shape from a mental health point of view." Moreover, because Louis has started high school, the psychiatrist states that this is "a crucial time in his development." It is Louis's "relationship with his father that keeps him going" and "any separation from his father would result in a major depressive episode in Louis and subsequent psychiatric hospitalization and treatment." The government does not contest these findings.

II.

The Sentencing Guidelines state that "family ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6. The Sentencing Commission, however, advises that although family circumstances is "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range, [it] may be relevant to this determi-

nation in exceptional cases." U.S.S.G. Ch. FIVE, Pt. H, Refs & Annos. (*citing* § 5K2.0 (Grounds for Departure)).

I have broad discretion in departing downward in a sentence when not blocked by a specific guideline. *Koon v. United States*, 518 U.S. 81, 98–100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The Seventh Circuit recognizes downward departures based upon extraordinary family circumstances. *United States v. Canoy*, 38 F.3d 893, 906 (7th Cir.1994). I may depart from an applicable guidelines range once I find that "a defendant's family ties and responsibilities or community ties are so unusual that they may be characterized as extraordinary." *Id.* In this case I find that Mr. Link's situation "presents atypical and extraordinary circumstances that warrant a departure." *United States v. Owens*, 145 F.3d 923, 929 (7th Cir.1998).

In *United States v. Sclamo*, 997 F.2d 970, 973–74 (1st Cir.1993), the court of appeals affirmed a downward departure where the defendant had developed a special relationship with the young son of a woman with whom he was living. The boy had psychological and behavioral problems and his psychologist believed there would be a risk of "regression and harm if [the] defendant were incarcerated." *See Canoy*, 38 F.3d at 908 (citing *Sclamo* with approval). Here, Mr. Link has a unique and special relationship with an emotionally fragile child who is essentially wholly dependant upon him for nurture and support, and who may become so depressed by being separated from his father as to require psychiatric hospitalization. It is not just that we have a healthy family that would be disrupted by a longer sentence. Mr. Link's family is far from healthy, and he is its only linchpin. The guidelines do not contemplate "a discount for parents of children," *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir.1999), but a departure here would not be giving such a discount. The facts of this case are truly unique and extraordinary.

In *Stefonek*, an analogous but much less extreme case, the defendant was the single mother of a 12 year old child with learning problems that the defendant assisted her in overcoming. There was unrebutted testimony that the learning problems of the defendant's child would be aggravated by her absence. *Id.* at 1038. The Seventh Circuit there remanded the sentencing to the district judge for further consideration because, "[w]e do not know whether the district judge would have departed downward on the basis of extraordinary family circumstances alone. Nor does the expert testimony indicate that the harm to [the defendant's] child from her absence would be greater than the harm to a normal child, or explore what care will be available for the child while [defendant] is in prison. We do know that the child's father is available to assist in taking care of her while [the defendant] is in prison, and for all we know, or the record shows, professionals are available to deal with children's learning problems as effectively—probably more effectively—than mothers who are not themselves educat[ors]." *Id.*

In this case, both the undisputed facts and the psychiatrist's report indeed indicate that the harm to Mr. Link's child from his absence would be greater than the harm to a normal child. I have explored what care will be available for Louis if Mr. Link were in prison. Louis's mother refuses to take care of him. While it might be physically possible for Mr. Link's brother or sisters to care for Louis, they do not live near him (one is not even in this State), his aunt is too young to realistically be the caretaker of even an ordinary 14–year–old boy, and the evidence indicates they could not provide the special emotional support he needs and he is not close to his uncles and aunts. His transitional circumstances in high school, and dangers of having to uproot him from Marist High School and a familiar neighborhood under the stressful circumstances of incarcerating his father make this unadvisable. Unlike the situation in *Stefonek*, professionals are not available to deal with

Louis's problems. He needs his father, and if he does not have his father, he will need a psychiatrist, or even institutionalization. For these reasons, I exercise my discretion to depart downward outside the Sentencing Guidelines range.